# Onondaga County Court.

January, 1900.

## PEOPLE v. MILLER.

1. CRIMINAL LAW—DISORDERLY PERSON—EVIDENCE.

> On the question whether the defendant has abandoned or neglected the complainant within the meaning of section 899 of the Code of Criminal Procedure, hearsay evidence of first husband is not permissible.

2. SAME.

> Such evidence is relevant only in cases where the pedigree to which it relates is in issue, and it is not admissible where it is only relevant to the issue itself, i. e., the alleged marriage of the parties to the present proceeding.

3. SAME—PROOF.

> The magistrate has no power to find the defendant guilty, as a disorderly person, in that he "did leave his wife in danger of becoming a burden upon the public," where the defendant deeded a house and lot to the complainant, and it does not appear that this property is not of sufficient value, as between the town and complainant, to amply protect the town from the complainant's becoming a burden upon it, and it appears affirmatively that no application has been made by her to the overseer of the poor for support.

APPEAL from a record of conviction and warrant of commitment made by a justice of the peace, as a magistrate, adjudging that the defendant was a disorderly person, pursuant to subdivision 1 of section 899 of the Code of Criminal Procedure.

Dennis B. Keeler, for appellant.

Giles H. Stilwell, for respondent.

ROSS, J.—The complainant, Elizabeth Miller, who claims to be the wife of the defendant, is forty-four years of age. She was married in 1873 to one George Nucall, in the state of New Jersey, and lived with him for seven years. There were three children born of such marriage, two of whom are living in New Jersey, and one, the witness, Lizzie Toole, residing in Syracuse. The complainant met the defendant at her husband's house in

the state of New Jersey, abandoned her husband and two of her children, and commenced a meretricious cohabitation with the defendant in Syracuse. No ceremonial marriage of the complainant and Miller has ever been performed. It appears incidentally, and by recitals in an agreement made between the complainant and Miller in June, 1898, that she has had children born since her illicit intercourse with the defendant. That the youngest is thirteen years of age, and that there is a son nineteen years of age. The complainant belongs to a religious sect originating in Switzerland; its members do not believe in any ceremony or contract of marriage. The evidence is silent as to the details of this cohabitation; where and how they lived whether Miller treated the complainant as his wife; whether he held out to the world that she occupied that relation to him. It appears, however, that in June, 1898, they separated, and an agreement of separation was entered into between these parties, being in substance the usual agreement of separation between husband and wife. By the provisions of this agreement Miller was to deed to the complainant a house and lot, which he did; and to pay two dollars per week for her support. He was to have control and custody of the children, the complainant having the right to visit them at her pleasure; and she relieved the defendant by the terms of this instrument from any liability for her support. This agreement was to continue for one year, and in its recital the defendant refers to the complainant as his wife. In February, 1899, the complainant and defendant again commenced to live together, and after three weeks the defendant left her, since which time they have had no dealings or conversation with each other, and he has not contributed towards her support. The house deeded by the defendant to the complainant is subject to a mortgage of $600, and it does not appear what it is worth, except that it does appear that it has produced very little income. It is claimed by the complainant that Nucall is dead. She swears to this fact, but it appears, upon her cross-examination, that she has no knowledge upon the subject except as derived from the following sources: A letter sent to a Mr. Souley in the handwriting of one Jacob Peters, who lived in New York; and information received by her children,

by mail, about a year before the agreement of June, 1898 ; no details being given as to the nature of this information or from whom it was received. That more than four years ago a man told her that her husband was dead. That the witness, Lizzie Toole was sworn and she said she never had seen her father ; that some four years ago she went to Jersey City, and that in that city she heard that her father was dead ; she did not know where her father had formerly lived and her sisters told her that their father was dead. That she was not particularly interested in knowing whether her father was dead or alive.

The claim of the plaintiff is in brief that, although this co-habitation was illicit in its origin, a change in its character may be shown by acts and circumstances indicating that the connection has become matrimonial within the principles laid down by Judge Vann in the case of Gall v. Gall, 114 N. Y. 118. And that evidence of the admissions of the defendant and the acts of the parties justify a finding of a marriage subsequent to the death of Nucall, the complainant's husband, and that such finding is binding upon this court. Of course no valid marriage between these parties of any sort could occur while Nucall lived, and it was incumbent upon the complainant to show the fact of his death by competent evidence ; and this I think she has failed to do. In considering this question, we can easily be confused by the careless use of terms. It is a fact that hearsay evidence is admitted to prove pedigree, within certain limitations, and that the term pedigree embraces proof of death. Eisenlord v. Clum, 126 N. Y. 552. But such evidence is not admissible, i. e., hearsay proof of death, until the declarant is himself dead. See Stephen's Digest of Evidence, article 25. "Statements, written or verbal, of facts in issue or relevant or deemed to be relevant to the issue, are deemed to be relevant, if the person who made the statement is dead, in the cases, and on the conditions, specified in articles 26–31, both inclusive." And see Eisenlord v. Clum, 126 N. Y. 563. Article 31 refers to declarations as to pedigree. If the statements of the writers of the letters mentioned, and of the daughters in Jersey City are admitted, we would have hearsay evidence of a report which is itself hearsay. The report that Nucall was dead is

wholly hearsay, and if such a distinction may be made, hearsay of a remote character; for the opportunities of knowledge of the party whose statement is repeated are not disclosed. It does not appear that the writers of the letters, or Nucall's daughters in Jersey City, except from such inference as may be derived from their relationship, had any knowledge of the facts whereof they claimed to speak; and such knowledge was not even based upon a general belief and report in the community where Nucall had formerly lived. The fact, stated by these people, was apparently not personally known to them; and the agency, sought to be used to convey such statement of such supposed knowledge, is again hearsay of the most apparent and inexcusable character, the admission of which would violate every rule requiring the best attainable evidence. If the daughters, living in Jersey City, or the writers of the letters, were on the stand themselves, then would arise another question, not as to proof of specific facts learned by them by hearsay, i. e., the death—which would not be admissible—but a general report and belie in such a fact, in the community, which would be admissible but has nothing whatever to do with the rule regarding the ad mission of hearsay evidence to prove the death itself. Jackson v. Etz, 5 Cow. 319. The declarant, not being himself dead the evidence is inadmissible. It needs no argument to show the necessity for this rule. If you can ask Mrs. Toole to testify as to what a stranger to this proceeding told her in Jersey City, you could ask her to testify as to what a stranger told he upon the subject, even if such person was in the courtroom The trouble with this evidence is that you are seeking to show not what the fact is, i. e., the death, but what some one said about it who is not himself produced. In the case of Eisenlord v. Clum, supra, the evidence was not what some one said about the fact, i. e., the death, but it was direct testimony to an original fact, viz., common reputation of death.

The rule, permitting statements of deceased persons as to matters of pedigree to be given, arises from the necessity of the situation and is subject to many limitations. I quote from the first condition named in article 31 of Stephen's Digest of Evidence: "Such declarations are deemed to be relevant only in

cases in which the pedigree to which they relate is in issue, and not to cases in which it is only relevant to the issue." The issue in this case is whether Miller and the complainant are husband and wife, and if so, has he abandoned or neglected her within the meaning of section 899 of the Code of Criminal Procedure. The fact of the death of the man Nucall, to whom, the complainant was married, is not in issue, but is only relevant to the issue, i. e., the marriage. If his widow claimed dower then his death would be in issue. The time of his death might be relevant to the issue. Eisenlord v. Clum, supra, 566.

In construing the questions arising upon this appeal, there should be no presumption in favor of the complainant, who has abandoned one husband and two families. It is not my intention to pass upon the question, assuming that the death of Nucall was properly shown, whether there is sufficient evidence of a subsequent marriage to require its submission to a jury. For the reasons stated the record of conviction and warrant of commitment of the magistrate cannot be sustained. There is also another difficulty of quite a serious character presented in the record before me. The defendant assuming that he is the husband of the complainant, could, within the provisions of section 899, be convicted of having actually abandoned his wife or children without adequate support—the evidence might justify this particular finding—or of leaving them in danger of becoming a burden upon the public, or of having neglected to provide for them according to their needs. The magistrate found the defendant guilty of being a disorderly person: "In that the said George U. Miller, at the town aforesaid, on the said 24th day of July, 1899, did leave his wife in danger of becoming a burden upon the public." There is no proof to sustain this finding. It appears that Miller deeded a house and lot to the complainant, and it does not appear that this property is not of sufficient value, as between the town of Geddes and the complainant, to amply protect the town from the complainant's becoming a burden npon it. It appears affirmatively that no application has been made by her to the overseer of the poor for support.

I desire to leave the complainant in a position to retry the

issues relative to the death of Nucall, if she so desires, and the form of judgment, to be entered in this matter, may be reserved until the respective attorneys appear before me upon the settlement of the same.

## NOTE ON DISORDERLY PERSON.

ABANDONMENT.—The pendency of a criminal proceeding before a magistrate of the city of New York is a bar to the acquirement of jurisdiction in a similar proceeding for the same cause, and between the same parties before any other magistrate in any borough of said city.    People ex rel. Sagazei v. Sagazei, 14 N. Y. Cr. 129.

A wife, abandoned by her husband, does not constitute a family.    Id.

Such officials have ceased to exist; and, in their stead, has been instituted the office of Commissioner of Public Charities of the borough in which the proceeding is had.    Id.

Abandonment, in the sense in which the term is used in the statute means the actual and willful desertion by the husband of the wife.    People ex rel. Com. P. C. & C. v. Cullen, 12 N. Y. C. 462, 463.

Appeal from conviction, under sections 685 and 686 of " Greater New York Charter " for having abandoned wife or children without adequate support, etc., lies solely to court of general sessions.    People ex rel. Keller v. Hinsdale, 13 N. Y. Cr. 112.

The offense of abandoning or deserting a wife, if not a crime within the meaning of the Penal Code, is clearly of a criminal nature, and it is incumbent upon the people to prove it.    People ex rel. Com. P. C. & C. v. Cullen, 12 N. Y. Cr. 463.

BOND.—A bond required by section 686 of the charter of the city of New York for the support of a wife or children, to the Commissioner of Public Charities of the borough in which a proceeding for abandonment is brought in order to be a valid and subsisting obligation, must conform to the provisions of the statute.    A bond for payment to the Commissioner of Public Charities in the city and county of New York, for the support of a family is not warranted by law, and the giving of such bond would not preclude an appeal from the judgment of a city magistrate adjudging defendant a disorderly person. People ex rel. Sagazei v. Sagazei, 14 N. Y. Cr. 129.

SUPPORT OF WIFE.—In a prosecution for being a disorderly person, in that the defendant failed to support his wife, it is a question for the trial magistrate whether his offer to support