PEOPLE v. DE WOLF.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1909.)

1. HUSBAND AND WIFE (§ 302*)—ABANDONMENT—NATURE OF OFFENSE.
  A conviction under Code Cr. Proc. § 899, subd. 1, for neglect by a husband to provide for his wife according to his means, is not sustainable where she left him without adequate excuse.
  [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1100; Dec. Dig. § 302.*]

2. HUSBAND AND WIFE (§ 302*)—ABANDONMENT—NATURE OF OFFENSE.
  It is essential to a conviction under Code Cr. Proc. § 899, subd. 1, declaring a husband who shall neglect to provide for his wife according to his means a disorderly person,·that the wife is likely because of such neglect to become a public charge.
  [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1100; Dec. Dig. § 302.*]

  Kruse and Spring, JJ., dissenting.

Appeal from Oswego County Court.

George H. De Wolf was convicted in a justice's court under Code Cr. Proc. § 899, subd. 1, declaring a person who shall neglect to provide for his wife according to his means a disorderly person.   From a judgment of the County Court, affirming the conviction, he appeals. Reversed, and proceedings dismissed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

D. P. Morehouse, for appellant.

W. B. Baker (Freelon J. Davis, Dist. Atty., on the brief), for the People.

ROBSON, J.   Defendant's wife is the complainant, who verified the information upon which the justice issued the warrant for defendant's arrest.   The specific act, or omission of duty, with which he is charged in the information, and which is recited in the judgment

convicting him of being a disorderly person, is that he "is neglecting to provide for his wife according to his means." The marital experience of these two people, who were both of mature years, had extended over a period of about 2½ years at the time these proceedings were instituted. Defendant is a farmer of moderate, but sufficient, means. The home where he has always lived is upon a farm of 50 acres, which adjoins an 80-acre farm owned by him, upon which there is no dwelling house. Subject to his mother's life estate in the 50 acres, he owns the fee of that parcel. On this farm there is a commodious dwelling house in good repair and necessary farm buildings. Prior to his marriage, his mother and himself constituted the family. Complainant, when she married defendant, expected to make her home where her husband was then living, and expected that defendant's mother, who is a woman 75 years of age, would live with them as a member of the family, and that she and the mother would each do part of the housework. Not long after the wife became a member of the household, domestic differences arose, chiefly growing out of vexing and vexatious disagreements between the wife and mother. The husband seems in a measure to have supported the mother's position in these disputes and disagreements, and we are not able to say from the evidence that he was without some justification in so doing.

It would be of little profit to further pursue the disagreeable details of these domestic quarrels, which ultimately resulted in the wife's leaving her husband's home and returning to her mother's house, from which she came on her marriage. In all these quarrels she seems, however, to have sufficiently maintained her side of the controversy, and justified her own diagnosis of her temperament that she was "nervous and easily fretted." It is clear that the defendant provided adequately for his wife up to the time of her leaving his home, and that his refusal or neglect to provide for her thereafter was because she had left him. Apparently the sole occasion of her leaving was his definite refusal to provide for their use a home, or living rooms, from which his mother should be excluded. We conclude that there was not, at the time she went away, sufficient reason, or adequate excuse, for the course she took.

We think that she has also failed to show another and equally necessary element of the offense of which defendant has been adjudged guilty. This is that she was likely by reason of his failure to support her to become a charge upon the public. The offense charged is one not solely against the wife, though the proceeding may indirectly result in her benefit; but primarily it is for the protection of the public against an expense which is liable to be occasioned to it by reason of the failure of the husband to support the wife. People v. Crouse, 86 App. Div. 352, 355, 83 N. Y. Supp. 812; People ex rel. Douglass v. Naehr, 30 Hun, 461; People ex rel. Feeney v. Dershem, 78 App. Div. 626, 79 N. Y. Supp. 612. We fail to find any evidence whatever that the wife was liable to become a public charge. Her testimony shows that she had money in the bank, and that, after leaving her husband, she had been earning money in the exercise of her trade or avocation as a dressmaker.

We conclude by adopting, as an expression of our views as to the proper disposition of this case, the apt statement of Houghton, J., in People ex rel. Demos v. Demos, 115 App. Div. 410, 412, 100 N. Y. Supp. 968, 969:

"The statute was not enacted for the settlement of matrimonial differences, and magistrates' courts were not organized to adjust domestic quarrels. If the defendant was guilty of such conduct towards the complainant as justified her in refusing to live with him, the courts were open to her to bring an action for separation and thereby obtain provision for her support. A magistrate's court is not a divorce court, and complaint of abandonment in that court is not a proper method for obtaining a decree of separation from bed and board. To constitute the offense, a legal abandonment must be shown, as well as the fact that the wife or child is likely to become a public charge, and in both respects the proof against defendant was insufficient."

Judgment of County Court and justice court reversed, and proceedings dismissed. All concur, except SPRING and KRUSE, JJ., who dissent in a memorandum by KRUSE, J.

KRUSE, J. (dissenting). The defendant was present on the trial, but saw fit not to be sworn, and no evidence was given on his behalf. He rested his case upon the testimony of his wife, who was a witness for the prosecution. The defendant married his wife February 21, 1906, and she lived with him until May 13, 1908, when she left him.

It is contended on behalf of the defendant, and a majority of this court seem to hold, that there was not at the time she went away sufficient reason or adequate excuse for her so doing. I cannot assent to this view. If her testimony is true (and the defendant does not dispute it), I think he entirely misconceived the duties he owes to his wife. The wife testifies:

"She [referring to her husband's mother] would push me away when we separated the milk. My husband spoke to me on one of those occasions. I put the bread into the jar, and the cover would not go on easily, so I pushed it on. My husband said he would knock my head off my shoulders. I have had the door shut in my face by his mother about three times. I was pushed onto the stove in the summer kitchen. This was the second time. The first time my husband was on the side porch, and I went to speak to him, and he pushed me out. * * * Last summer my husband said that he thought it was a shame for me to lay abed and let mother do the work. I had had the sick headache. This was the second day of my sickness."

He refused to get anything for the house, except what was absolutely necessary, such as groceries, etc. His mother waved her arms and acted crazy. She rushed through the house shouting, and claimed that the wife had made her deaf and blind. The mother kicked one of her shoes off and directed it at the wife, and when she (the wife) called her husband's attention to it, and asked what he thought of that, he said that he had never seen her do such a thing as that before. She asked her husband if she could have rooms in the house. He said that she could not have one room in the house without his mother. She asked him to provide a home somewhere else. He said, "No." She asked him if he would not have a house on his own land, across the road. He said, "No." Then she asked him what she should do. He said that he "didn't care a damn" what she did; what became of her. She said she would not stay with him. Then she left.

It is not at all strange that she should become nervous and fretful under such treatment. Of course, her husband did not knock her head off, as he threatened; but she was pushed on the stove and off the porch. I will leave that branch of the case without further comment, except to say that I think she was abundantly justified in leaving.

Section 899 of the Code of Criminal Procedure declares that persons who actually abandon their wives or children, without adequate support, or who neglect to provide for them according to their means, are disorderly persons. There is no question but that the defendant here is abundantly able to support his wife and to furnish her a home; but he refuses to do so, except as heretofore. I think she is not obliged to submit to the indignities and ill treatment to which she has been subjected, and that the town authorities cannot require her to do so. If, under such circumstances, she lacks for proper support and is in danger of becoming a public charge, it is the duty of the proper officer to take the proceedings to compel her husband to support her and give the proper undertaking therefor.

Section 901 of the Code of Criminal Procedure provides, in substance, that the form of the undertaking shall be to indemnify the town against her becoming a public charge within one year.. I think the evidence was sufficient to require the husband to give the undertaking. Of course, if there is no breach in the condition of the undertaking, no harm will come to the defendant in giving it.

I think the County Court was right in sustaining the order of the justice of the peace, and that the judgment should be affirmed.

SPRING, J., concurs in this dissent.