PEOPLE v. HORWITZ.

(City Magistrate's Court of New York City. May 24, 1912.)

1. MUNICIPAL CORPORATIONS (§ 594*)—ORDINANCES—VALIDITY.
    Under Greater New York Charter (Laws 1901, c. 466) § 50, authorizing the board of aldermen to regulate the exhibition of advertisements or handbills along the streets, and section 43, authorizing such board to make ordinances not contrary to law or the United States Constitution

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

deemed necessary and proper for the good government, order, and protection of persons and property and for the preservation of the public health, peace, and prosperity of the city and its inhabitants, the board had power to adopt an ordinance providing that no person shall throw, cast, or distribute in or upon any street, avenue, or public place, or in front yards or stoops, any handbills or other advertising matter.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1316–1318, 1320, 1327–1329; Dec. Dig. § 594.*]

2. MUNICIPAL CORPORATIONS (§ 631*)—ORDINANCES—CONSTRUCTION.

Under a municipal ordinance providing that no person shall "throw, cast or distribute" in or upon any street, any handbill, circular, or other advertising matter, the act of distribution is a complete offense, separate from the act of throwing, and hence it is not necessary that the objectionable matter should be cast or thrown away so as to litter the streets.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1386–1388; Dec. Dig. § 631.*]

3. MUNICIPAL CORPORATIONS (§ 631*)—ORDINANCES—CONSTRUCTION.

A municipal ordinance, providing that no person shall throw, cast, or distribute upon any street any handbill, circular, or other advertising matter, is violated by the distribution of such matter, although inclosed in a container, envelope, or wrapper, and hence was violated by inclosing such matter in newspapers sold on the street by accused.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1386–1388; Dec. Dig. § 631.*]

4. MUNICIPAL CORPORATIONS (§ 631*)—ORDINANCES—CONSTRUCTION.

A municipal ordinance, providing that no person shall throw, cast, or distribute upon any street or public place or in front yards or stoops any handbills, circulars, or other advertising matter, is not violated by distributing such matter in a private place, such as a store, or by a delivery of newspapers containing such matter in the home of the reader, or by mailing such matter.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1386–1388; Dec. Dig. § 631.*]

5. CONSTITUTIONAL LAW (§ 88*)—PERSONAL RIGHTS—"LIBERTY."

The constitutional right of "liberty" includes the right to pursue any legitimate business enterprise for a livelihood, subject only to the proper exercise of the police power.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 164, 165; Dec. Dig. § 88.*

For other definitions, see Words and Phrases, vol. 5, pp. 4126–4130; vol. 8, pp. 7705, 7706.]

6. CONSTITUTIONAL LAW (§ 275*)—DUE PROCESS OF LAW—INTERFERENCE WITH ADVERTISING BUSINESS.

A municipal ordinance forbidding the throwing, casting, or distributing upon any street of any handbill, circular, or other advertising matter, construed to forbid such distribution by folding such matter in newspapers sold on the street, does not violate Const. art. 1, § 6, providing that no person shall be deprived of liberty without due process of law, since a municipality may prohibit the use of the streets for purposes detrimental to the common good or which conflict or interfere with the rights of others in the enjoyment thereof.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 841; Dec. Dig. § 275.*]

Samuel Horwitz was convicted of a violation of a City Ordinance. On motion in arrest of judgment. Motion overruled.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

F. J. Sullivan, Deputy Asst. Dist. Atty., of New York City (Abraham Benedict, of New York City, of counsel), for the People.

Frank J. McCoy, of New York City, for defendant.

FRESCHI, City Magistrate. This case was heard by me originally on a summons. Later a complaint was filed and a warrant issued. The defendant requested an immediate trial and he was adjudged guilty. Thereafter counsel appeared on the day set for sentence, and, although given an opportunity to adduce additional evidence, he did not avail himself of it, but filed instead a brief on a motion to arrest judgment herein because, as he states, the facts charged do not constitute a crime.

On Sunday, January 28, 1912, the defendant, who was engaged in selling newspapers and had his stand on Ninth avenue and Forty-Second street, Manhattan borough, city of New York, did insert and distribute certain handbills, circulars, and advertising matter, by delivering such matter contained in copies of the New York Times and New York World sold by him.

Is such distribution unlawful?

[1] My attention is directed to the provisions of chapter 9, § 408, of the Code of Ordinances of the City of New York, on page 98 (1911 Edition), which provides:

"That no person shall throw, cast or distribute in or upon any of the streets, avenues or public places, or in front yards or stoops, any handbills, circulars, cards or other advertising matter whatsoever."

Section 418 of the Ordinances provides that any person violating such provisions shall be deemed guilty of a misdemeanor, and upon conviction thereof by any magistrate, either upon confession of the party or competent testimony, may be fined for such offense any sum not less than $1 and not exceeding $3; and in default of payment of said fine may be committed to prison by such magistrate until same be paid. Such imprisonment shall not exceed one day.

Section 50 of the Greater New York Charter (Laws 1901, c. 466) provides that, subject to the Constitution and the laws of the state, the board of aldermen shall have power, among other things, "to regulate the exhibition of advertisements or handbills along the streets."

To carry into effect the powers conferred upon the city of New York by the charter or by any other law of the state, section 43 of the charter provides that the board of aldermen may "make, establish, restore, modify, amend and repeal ordinances," which are not contrary to state law or the United States Constitution, deemed "necessary and proper for the good government, order, protection of person and property, and for the preservation of the public health, peace and prosperity of said city and its inhabitants."

The enumeration of the powers in the charter shall not be held to limit the legislative power of the board of aldermen, and they may pass such other ordinances "for the good rule and government of the city" as to the board may seem meet, "provides fines, penalties, forfeitures and imprisonment for violation thereof."

The provisions of the Greater New York Charter are ample to warrant the enactment of the ordinances in question. Sections 43 and 50.

The alleged objectionable matter consists of ordinary handbills or "throw-aways"; a folder of the Surprise Department Store, printed in black and colored ink, announcing "Stocktaking Sale," which when open measures 17 by 22½ inches, an advertising sheet printed in precisely the same style as a newspaper advertisement and a sheet with printed matter on both sides, containing cuts, advertising matter, and prices of the goods offered for sale by McPartland & O'Flaherty, with the words "McPartland & O'Flaherty Company Bulletin," printed at the top and only on one side of the sheet, in very small brevier type, the sheet measuring 16½ by 21½ inches, resembling in size, style, make-up, and character a full-sized advertising sheet of a newspaper.

The defendant, who admits these facts, testified that he received the sum of 15 cents per 100 for inserting and distributing each circular in the newspapers, in the manner as herein stated. The plain purpose of this ordinance is to prohibit the distribution, among other things, of circulars, handbills, etc., openly or otherwise, in a public place. This is the gravamen of the regulatory ordinance. The undisputed evidence shows that the defendant did the thing prohibited, i. e., he distributed printed matter in the public street.

[2] Counsel for the defendant argues that before a conviction can be had there must be proof that the objectionable matter was cast or thrown away, and that the streets were littered with it.

In my opinion, it is not necessary to prove, as a condition precedent, that the circulars and the printed matter were thrown upon the street. He who *"distributes"* it in a public place is as guilty of a misdemeanor under the ordinance, assuming, of course, the constitutionality of the ordinance, as is he who throws any such circular so distributed upon the street. The act of distributing and the act of throwing are separate offenses under the same ordinance.

The board of aldermen use the word "or" in the phrase of the ordinance, "throw, cast *or* distribute." If it had not been intended to prohibit the mere distribution of circulars, etc., the conjunctive "and" would have been employed. The mere act of distribution makes the offense complete.

[3] There is no difference between the case of the person, who stands on a street corner or other public place and openly distributes handbills or advertising matter, and that of the person, who chooses to adopt a container, envelope, wrapper, or other thing in which he incloses or places handbills, circulars, or advertising matter. The latter is precisely in the same position, in my opinion, if he uses that means of distribution, as the individual who stands on the street corners or other public places and openly gives away circulars. It is as much a violation of the ordinance in one instance as it is in the other.

[4] There must be a distribution on a public street or other public place. So it seems that the distribution of such matter in any private place such as a store, or a delivery of newspapers containing the ob-

jectionable matter in the home of the reader, or the sending out through the mail provided such act does not violate any postal regulation in such cases, is not prohibited, by this ordinance, since it is not a public distribution.

The defendant contends that the ordinance under consideration is an unreasonable and arbitrary interference with said limitation upon his constitutional rights. He asks to be discharged, claiming that the ordinance is in conflict with the Constitution (article 1, § 6) which provides that "no person shall be deprived of life, liberty or property without due process of law."

Defendant's counsel properly argues that the constitutional rights of the defendant to life, liberty, and property are wholly unlimited and unrestricted except by considerations of the public good, and contends that no abridgment or deprivation of these rights by the enactment of ordinances will be upheld or enforced except under the police power operating to the benefit of all individuals of the community, equally.

Mr. Justice Peckham, writing for the Court of Appeals, in People v. Gillson, 109 N. Y. 389, 398, 17 N. E. 343, 345 (4 Am. St. Rep. 465), said:

"The following propositions are firmly established and recognized: A person living under our Constitution has the right to adopt and follow such lawful industrial pursuit, *not injurious to the community*, as he may see fit. The term 'liberty,' as used in the Constitution, is not dwarfed into mere freedom from physical restraint of the person of the citizen as by incarceration, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. 'Liberty,' in its broad sense, as understood in this country, means the right not only of freedom from servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any *lawful* calling, and to pursue any *lawful* trade or avocation. These principles are contained and stated in the above language in various cases, among which are Live Stock Association v. Crescent City, etc., Co., 1 Abb. U. S. 388, 398 [Fed. Cas. No. 8,408]; Slaughterhouse Cases, 16 Wall. 36, 106, 21 L. Ed. 394; Matter of Jacobs, 98 N. Y. 98 [50 Am. Rep. 636]; Bertholf v. O'Reilly, 74 N. Y. 509 [30 Am. Rep. 323] and People v. Marx, 99 N. Y. 377 [2 N. E. 29, 52 Am. Rep. 34]."

[5] It is perfectly plain that the defendant's right of liberty includes the right to pursue any legitimate business enterprise for a livelihood, and that this right can only be limited by the proper exercise of the police power. The citizen of the state and city unquestionably has a right to use the highways, but it must be exercised in a manner that shall not abridge or interfere with the rights of his fellow citizens. This right has time and again been restrained and limited in many ways. The city has by ordinance limited the use of the highways by hackmen, peddlers, and others; it also has ordained that booths and newspaper stands must be licensed.

No special advantages in privileges should be given to one over others. Nothing should be done that will interfere with the condition of the streets or their free use by all alike. Even public gatherings, which obstruct the public streets, are not permissible unless the use

of the highway is licensed, and yet the right of free speech is one of the inalienable rights under our constitutional government.

The city, within the exercise of its powers, has granted by ordinance privileges to public hacks to stand at given points on the highway, and it seems that these have been looked upon as a proper exercise of the police power. This is more liberal than I am willing to be. I doubt the power of the city to go to that extent in granting privileges to citizens in special lines of business.

I question the right of any village, town, or city to grant by special license to any person or set of individuals the privilege to use for a private purpose the public highways and the streets which belong to all the people alike, and over which the state has made the city trustee for their benefit, yet it must be obvious that to that extent the right of liberty is qualified.

The district attorney cites many authorities in support of the constitutionality of the ordinance in question, among them City of Philadelphia v. Brabender, 201 Pa. 574, 51 Atl. 374, 58 L. R. A. 220; Wettengel v. City of Denver, 20 Colo. 552, 39 Pac. 343; and Anderson v. State, 69 Neb. 686, 96 N. W. 149, 5 Ann. Cas. 421.

These cases seem to hold that an ordinance like the one before me is a bona fide exercise of the police power, and it does not arbitrarily and unreasonably interfere with the rights of an individual under the guise of police regulation. They seem to argue that the natural and probable consequence of the placing of advertising matter in the hands of those who have no desire or use for them is to litter the streets and, probably, frighten horses thereon at the time.

[6] I am not prepared to go as far as that and do not altogether agree with that reason as a sound foundation for the sustaining of an ordinance of this character. I would put the constitutionality of this ordinance on the ground that a municipality, through its legislative body, has the right to prohibit the use of the streets by persons for any purposes detrimental to the common good, or that may conflict or interfere with the rights of others in the enjoyment of the highways, which should be unincumbered and clean, so as to promote the safety, health, and comfort of the public. Lange v. Palmitter, 71 Misc. Rep. 158, 128 N. Y. Supp. 426, affirmed 144 App. Div. 894, 128 N. Y. Supp. 1140, and now pending in the Court of Appeals.

In the Palmitter Case, supra, the defendant was charged with unlawfully conducting the business of selling tickets of admission to the Metropolitan Opera House. He admitted that he was a ticket speculator and that he sold tickets in the public highway. He moved his discharge on a writ of habeas corpus. The ordinance prohibiting such sale of any ticket of admission to a theater was attacked as unconstitutional. Mr. Justice Newburger, writing in this last case, quotes the Court of Appeals (People ex rel. Armstrong v. Warden, 183 N. Y. 223, 76 N. E. 11, 2 L. R. A. [N. S.] 859, 5 Ann. Cas. 325), as saying:

"The other objection made by the relator to the validity of the statute presents a question which has been very much discussed in this court, as well as in other courts, and that is that the statute interferes with the relator's right to carry on a lawful business without being hampered by statu-

tory regulations. The cases are abundant which hold that the individual has the right to carry on any lawful business or earn his living in any lawful way, and that the Legislature has no right to interfere with his freedom of movement. But, of course, these cases must all be understood as applying to laws that are not within the police power. If the statute comes fairly within the scope of the police power, it is a valid law, although it may interfere, in some respects, with the liberty of the citizen, which, of course, includes his right to follow any lawful employment. A statute to promote the public health, the public safety, or to secure public order or for the prevention or suppression of fraud is a valid law, although it may, in some respects, interfere with individual freedom. All business and occupations are conducted subject to the exercise of the police power. Individual freedom must yield to regulations for the public good. It may be laid down as a general principle that legislation is valid which has for its object the promotion of the public health, safety, morals, convenience and general welfare, or the prevention of fraud or immorality."

And he holds as follows:

"It is apparent that the control of the streets, with the adoption of reasonable regulations as to the traffic thereon, and the use of the sidewalks by foot passengers, is within the powers of the board of aldermen of this city. The ordinance is not unreasonable, oppressive, or in contravention of common right. Broadway is an important thoroughfare; it is crowded at all hours, and the effect of selling tickets on the sidewalk might be to collect crowds and thus to interfere with the use of the sidewalks by the public and lead to disorder. Nor does the ordinance deprive any citizen of the right of earning his livelihood in a lawful manner, as is contended by petitioner. It simply prohibits the party from selling tickets on the streets in front of any licensed theater or place of amusement. He may sell tickets in any store, office, and to any person, but not on the street in front of a licensed theater. Nor is the ordinance in violation of the constitutional rights of the petitioner."

The individual using the public highway does so in the enjoyment of his rights, and he must not be molested in any way without his consent in the exercise of that right.

It must be perfectly plain that the person who stands upon the highway and openly distributes handbills and circulars, or who distributes them in any other way, must, in a measure, annoy or tend to annoy persons thereon, who have a right to go along peaceably and without molestation. Such conduct in my opinion tends to a breach of the peace, and the board of aldermen, recognizing that fact, have ordained this ordinance for the proper regulation of the use of the streets of this city. This case is in the same class as the Palmitter Case, supra, which absolutely prohibited the sale of tickets of admission to any theater by ticket speculators on the streets.

While I recognize the right of the newsdealer to sell newspapers, yet he cannot in the pursuit of his business interfere with the rights of others.

The defendant relies upon the case of People v. Armstrong, reported in 73 Mich. 288, 41 N. W. 275, 2 L. R. A. 721, 16 Am. St. Rep. 578, decided by the Supreme Court of Michigan, in which a similar ordinance as the one now under consideration was construed. The defendant there was charged with and convicted of distributing a small card in violation of an ordinance which prohibited any person, circulating, distributing, or giving away any circulars, handbills, or advertising cards of any description, in or upon the public streets

or alleys in the city of Detroit. Mr. Justice Long, writing for the court, held the ordinance unconstitutional, and said in part that:

"The reasonableness or unreasonableness of an ordinance is not to be determined by the enormity of some offense it seeks to prevent and punish, but by its actual operation in all cases that may be brought thereunder. * * * If this act can be classed as an offense punishable by fine or imprisonment, then selling or distributing newspapers upon the streets would be punishable in the same way."

In so far as this case may seem to hold contrary to the opinion herein expressed, I feel that it is not in accord with the weight of authority and not binding upon the case here. In my judgment the decision in the Palmitter Case, supra, is conclusive.

The ordinance should be sustained as a proper exercise of the legislative power of the city of New York. I do not find that it is in conflict with the fundamental law. On the contrary, it seems to be in harmony with it, since the purpose of the ordinance is to regulate in a matter of the public convenience, and, in a measure, under the circumstances of this case, it prevents a repetition of the acts that may tend to deceive or work a fraud on the public.

The promotion of the public health and safety, morals, convenience, and general welfare, or the prevention of fraud or immorality, are purposes recognized as lawful whenever a municipality seeks to exercise the police powers for its own and citizen's welfare. People ex rel. Duryea v. Wilber, 198 N. Y. 1, 90 N. E. 1140, 27 L. R. A. (N. S.) 357, 19 Ann. Cas. 626.

While the ordinance has nothing whatever to do with health or morals directly, it in a way affects the safety and the peace of the community and its welfare generally, which must be conserved.

Since the evidence charges a misdemeanor, and I have found against the defendant, I see no reason why I should disturb such finding. As I understand that this is a test case, I hereby impose the minimum fine fixed by the ordinance, and the defendant will be committed in default of payment thereof.