CITY OF NEW YORK *v.* KAISER. **637**

Misc. 637]    Court of Special Sessions, City of New York, May, 1925.

CITY OF NEW YORK, Respondent, *v.* HOWARD KAISER, Appellant.

Court of Special Sessions of City of New York, Appellate Part, Second Department, May 8, 1925.

Crimes — disorderly conduct — defendant was convicted in Family Court of Borough of Brooklyn on ground of abandonment of wife and failure to support her — evidence shows that parties agreed to live apart — no evidence that wife is without means of support — conviction and order for support not authorized by Inferior Criminal Courts Act, § 74.

The conviction of the defendant as a disorderly person, and the order directing him to pay ten dollars per week for the support of his wife, which conviction and order were based on the alleged abandonment by the defendant of his wife and his failure to support her, were not authorized by section 74 of the Inferior Criminal Courts Act, as amended by Laws of 1919, chapter 339, since the evidence shows that the parties agreed to live apart or at least that the defendant did not abandon his wife, and since there is no evidence that the wife is without means of support.

McINERNEY, J., dissents.

APPEAL from a judgment of conviction had in the Family Court, Borough of Brooklyn, on October 9, 1924, adjudging the defendant, appellant, to be a disorderly person and placing him on probation for the period of two years, conditioned to pay ten dollars per week for the support of his wife.

*Anton Weidmann,* for the appellant.

*George P. Nicholson, Corporation Counsel* [*Henry J. Shields* of counsel], for the respondent.

EDWARDS, P. J.:

The appellant was convicted as a disorderly person for failure of performance of duty as husband, and the conviction is before us for review on his appeal.

The facts are quite peculiar. The wife says that at the end of an evening, for no apparent reason except a trivial dispute, the appellant went away from their home and did not return that night. He says her mother called and as she announced intention of remaining for the night, and there was only one bedroom in the three-room apartment he and his wife occupied, he went to his father's to sleep. Afterwards he came back, and it seems clear from the testimony of both that they agreed to separate, the difference in their narratives being chiefly concerning the actual division of their household effects between them and the agreement between them in respect to it. She went to live with her mother. The husband sued in the Supreme Court for separation on the ground of abandonment by the wife. Pending that action the wife

instituted an action for annulment of the marriage on the ground of sexual impotence of the husband. Both parties answered respectively in those actions, the wife making no counterclaim in the separation suit. Both actions seem to have been tried and dismissed on the merits. Thereupon this proceeding was instituted on the complaint of the wife alleging abandonment and failure to support.

The wife is a young woman, the matrimonial cohabitation continued only about two months, and there are no children. The wife still insists that her charge in the annulment suit is true and declares that she would not resume such cohabitation, and the husband so far as the evidence discloses has made no offer to renew it. The appellant paid temporary alimony during part of the time of pendency of the actions, but thereafter and until the order was made in this proceeding he has not contributed to the support of the wife.

I can find no evidence in the record that the wife is without means; and it is clear that the nervous condition described as affecting her does not constitute a disabling infirmity preventing her from earning a living in any occupation.

We must consider, therefore, whether the situation thus disclosed justifies the order of the trial court.

This consideration involves, of course, interpretation of the statute (Inferior Criminal Courts Act [Laws of 1910, chap. 659], § 74, as amd. by Laws of 1919, chap. 339). As to the matters here pertinent this is substantially identical with section 899 of the Code of Criminal Procedure, with two exceptions. Section 74, as amended, provides (1) " The wife, * * * is hereby declared to be a primary beneficiary of the order," (2) and evidence that she is " without means shall be presumptive proof " of her " liability to become a charge upon the public." The first of the above provisions is elaborated in the subsequent directions of the section as to the disposition of moneys recovered upon a forfeited undertaking. Aid in determining what those provisions mean is at hand, I think, on several sides.

The history of matrimonial actions in this State, including an action for separation for the husband's misconduct, shows that from early times jurisdiction was in the Court of Chancery (See 2 Kent's Com. [14th ed.] 125 *et seq.;* 2 R. L. 1813, p. 200, § 10; 2 R. S. 146, § 50 *et seq.*), there being no ecclesiastical courts here. The Supreme Court received the jurisdiction as successor to the chancellor. (N. Y. Const. art. VI.) The actions, therefore, belong to the equity branch of the Supreme Court. The Constitution at the time of the enactment of the amendment of the statute in 1919

CITY OF NEW YORK *v.* KAISER. **639**

Misc. 637]   Court of Special Sessions, City of New York, May, 1925.

forbade the conferring of equity jurisdiction upon the Family Court. (Art. VI, § 18, before the amendment of 1921. See *Allen* v. *Wolkof,* 182 App. Div. 634, 636.)

The proceeding under the designation contained in the title of part VI of the Code of Criminal Procedure is a special proceeding of a criminal nature.

It is to be noted also that the present section 74 recognizes its quality in the repeated use of the expression " danger of becoming a burden upon the public." Moreover both variances from the general statute in this section apply to any dependent entitled to relief by reason of his destitution.

I conclude, therefore, without extending the argument, that the special act does not differ essentially from the general law; that the provision making the dependent the primary beneficiary means that the policy of preventing the disorder of pauperism of a dependent is to be effected by compelling relief by the one obligated as soon as that condition is actual or imminent; and that the rule of evidence creates only a presumption of fact for expediting the presentment of the case by the prosecution.

Hence it is my opinion that repeated pronouncements by authority as to the scope and purpose of proceedings like this under the Code of Criminal Procedure apply and govern here.

" Magistrate's courts were not organized to adjust domestic quarrels." (*People* v. *De Wolf,* 133 App. Div. 879; *People ex rel. Demos* v. *Demos,* 115 id. 410; *People* v. *Mahoney,* 172 id. 962; *People* v. *Pollock,* 198 N. Y. Supp. 569.)

On the evidence it seems reasonably certain that at the end of the brief matrimonial experience the parting of the spouses was a separation by mutual consent and, therefore, that neither *abandoned* the other, according to the sense of the word *abandonment,* as used in the statutes relating to matrimonial duty. The judgment of the Supreme Court, having full jurisdiction of the subject-matter, decided indeed that the wife did not abandon the husband; but it did not decide that he abandoned her; and her own testimony as well as her course in the litigation in the Supreme Court shows conclusively not only that the separation was with her acquiescence, but also that it was in accordance with her desire and determination. Thus developed, the case presented to the Family Court only the question whether the failure of the appellant to support the wife living apart from him caused her to be in danger of want for the necessities of life. I think the answer should have been in the negative.

I advise that the order appealed from be reversed on the law and the facts, the proceeding dismissed and the appellant discharged.

Since dismissal now is not approved by a majority of the court, I concur in the determination on this appeal suggested by Mr. Justice Freschi — reversal on the law and the facts and direction of a new hearing.

Freschi, J. (concurring):

Upon an information filed alleging that this appellant had actually abandoned his wife, failed to provide for her, left her without adequate support, in danger of becoming a burden on the public, and neglected to provide for her according to his means, the magistrate in the Family Court found the appellant guilty of being a disorderly person, suspended sentence and placed him on probation for a period of two years, conditioned to pay ten dollars per week for the support of his wife.

This is a special proceeding of a criminal nature (*People ex rel. Commissioners of Charities* v. *Cullen*, 151 N. Y. 54; *People* v. *O'Neill*, 117 App. Div. 826) governed by the provisions of the Code of Criminal Procedure (§ 899) and the Inferior Criminal Courts Act, section 74, as amended by Laws of 1919, chapter 339.

There can be no question about the legislative authority to grant jurisdiction on the subject of support to the Magistrate's Court concurrent, in part, with the authority exercised by the Supreme Court in cases of this kind; and that such power has been legally conferred cannot, in my opinion, be successfully challenged. (*Matter of Estate of Stilwell*, 139 N. Y. 337, 342; *People ex rel. Ryan* v. *Green*, 58 id. 295, 301.) The Family Court is not a newly-created court since the Constitution of 1846; but, on the other hand, it is a continuance of the office of the justice of the peace. (*People ex rel. Burby* v. *Howland*, 155 N. Y. 270.) In this latter case the court said: " The office of justice of the peace came down to us from remote times. It existed in England before the discovery of America, and it has existed here practically during our entire history, both colonial and state, at first with criminal jurisdiction only." (See, also, 3 Daly [N. Y.], 547–558; 2 Rev. Laws, 1813, p. 350, chap. 86, § 22; Laws of 1832, chap. 58; Laws of 1844, chap. 315, art. I, § 3; Laws of 1873, chap. 538; Consol. Act [Laws of 1882, chap. 410], § 1541; Laws of 1895, chap. 601, § 3; Greater N. Y. Charter [Laws of 1897, chap. 378], § 1392; Laws of 1910, chap. 659, § 72.)

Originally, justices of the peace were vested with power to act in proceedings on a complaint by a wife against her husband for neglect to provide for her. (1 R. L. 1813, chap. 31, p. 114.)

I quite agree with my colleague, Justice Edwards, that jurisdiction in matrimonial actions was originally lodged in the Court

of Chancery by the Legislature in 1787 (2 Kent's Com. [14th ed.] 125. See, also, *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *Crouch* v. *Crouch*, 193 App. Div. 221; *Ackerman* v. *Ackerman*, 200 N. Y. 72, 76) and that subsequently the Supreme Court succeeded to this power; but I am unable to find any prohibition against a city magistrate exercising the powers vested in him in all the instances defined under section 74 of the Inferior Criminal Courts Act, as amended by chapter 339, Laws of 1919, which provides who may be adjudged a disorderly person. I do not mean to say that under the last-mentioned act, the Family Court as an inferior local court of criminal jurisdiction as constituted prior to the amendment of November 8, 1921, had conferred upon it any equity jurisdiction and all the powers of the Supreme Court in matters of support connected with matrimonial actions. Although the office of city magistrate is an ancient office, I find no case in which equity powers have ever been given to it. Prior to the amendment of section 685 of the Greater New York charter (Laws of 1901, chap. 466) by chapter 420 of the Laws of 1912 all the decisions held that there was no power in the magistrate to find a husband guilty of being a disorderly person unless he did leave his wife in danger of becoming a burden upon the public. (*People* v. *Miller*, 30 Misc. 355; *People* v. *Smith*, 139 App. Div. 361; *People ex rel. Commissioners of Public Charities* v. *Prince*, 128 id. 327; *People ex rel. Com. of Charities* v. *Duffin*, 68 Misc. 290.)

Is mere *abandonment* and non-support sufficient? Does mere *neglect* to provide for a wife according to a husband's means without proof that she is in danger of becoming a burden upon the public constitute one a disorderly person within the meaning of the statute?

It would seem that sufficient proof must be adduced in each such case to show that the abandoned or neglected wife has not been provided for and that she is without means and then by the rule of the statute she becomes presumptively liable to become a charge upon the public — a presumption which may be rebutted; but the condition precedent must be established that she is without " means " which includes " ability." The whole statute must be read together in order to understand the legislative intent. We should not take out a quotation and consider it quite apart from the context. I do not think that it was the purpose of the law-makers of this State to make it possible to adjudge a husband a *disorderly person* subject to imprisonment merely because he fails to furnish support for his wife in accordance with his legal obligations and fundamental duty irrespective of her income or ability

41

to earn means on her own account. Nor is the husband who fails to give according to the full measure of his income and means, although he has made some provision for his family, which the wife charges is inadequate, to be deemed a disorderly person aside from all other considerations, as at first might seem to be the case by reading subdivision a of the act under consideration. The general scheme of the statute (Inferior Criminal Courts Act, § 74) was designed to prevent the wife from becoming a charge upon the public purse. But where the abandoned or neglected wife is without any means of proper support, a presumption of fact established by law operates in her favor, and she is then entitled, unless the contrary be established, to an order against the husband for her benefit " specifying a fair and reasonable sum of money according to his financial ability, to be paid weekly * * * for the support of his wife."

In every case in the Magistrate's Family Court, therefore, it is imperative to find by competent proof of fact that, not alone has no adequate provision for her support been made by her husband, but that the wife is without means or ability to support herself. Has that requirement been met in the case at bar? The prosecutrix has testified that she is " not physically fit," " ill," " a nervous wreck," " run down " and " can't do a thing " and " not capable of holding a position." In these several regards, her testimony is only a mass of conclusions upon the question of her physical condition. Much testimony as to her physical state is secondary and valueless. As to her income, the testimony is far from satisfactory. While she does say that her husband had not furnished her with moneys or necessaries for her support since May 2, 1924, the record is barren of proper proof that she is without means, property or income whatsoever. The following is an extract of the complainant's testimony: " Q. At the time that he left you, did he leave you any money or visible means of livelihood? A. Why, no, he came back the next day and gave me ten dollars. At that time he agreed to give me ten dollars a week after that. The Court: Q. Has he made any provisions for your support since that time? A. No, sir. Q. Has he given you anything for your support since that time? A. Yes, sir." Here she refers to the alimony allowed in the Supreme Court actions. " By Mr. Kirk: Q. Well you have received no support from your husband for a month past, have you? A. No, sir."

There should be clear and positive proof on both of these subjects.

Before the presumption to which I have alluded arises, it is incumbent on the prosecution to lay a sufficient foundation of

facts on which to base it. It is far from an arbitrary and unreasonable presumption, and I believe that the prosecution has failed to lay that foundation. Furthermore, there is a serious doubt in my mind as to whether, in the light of the testimony of the witness Collins, the prosecutrix ever intended to live with her husband.

On the whole case, I am of the opinion that the evidence does not sustain the finding of the learned magistrate in particular as to the complainant being without means or ability to support herself by a clear preponderance of evidence, and it is a significant circumstance that at no time has she ever tried to invoke her civil rights to procure the necessaries of life upon defendant's liability.

I, therefore, vote to reverse the order herein and to grant appellant a new trial.

McInerney, J. (dissenting):

I vote to sustain the order.

Order of the Family Court reversed for errors of fact and of law and a new trial ordered. And it is further ordered that the appellant present himself before the Family Court, Borough of Brooklyn, on May 18, 1925, so that a date may be set for the new trial as ordered by this court.