THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANCES CASE, Respondent, *v.* EDWARD I. CASE, Appellant.

County Court, Oneida County, October 17, 1930.

*Maurice Supiro*, for the appellant.

*William R. Goldbas*, for the respondent.

HAZARD, J.   Sometime in September, 1930, apparently as a result of a misunderstanding arising because defendant insisted upon having a " step-nephew " live in his home, there occurred the culmination of a series of disagreements between the parties, growing out of that and, perhaps, some other subjects, and the defendant took the complainant to her parents' house, and left her there.   (Minutes, p. 6.)   She says she asked him to come after her that night, and he said: " I could stay up there for good." The next day, complainant and her mother and sister went back to the erstwhile home.   They found there, besides the defendant, the step-nephew, a young man who is said to have divided his time between working for the defendant and prize fighting.   Complainant told the boy to get out; and she says the defendant told the boy that he should stay there, and that the complainant should get out.   Concededly, the defendant called up the police and requested that an officer be sent, that " there are people that I want put out." Complainant says she tried to telephone, and that the defendant twice " gave me a shove and almost knocked me down."   A short time later, complainant and her relatives left, and the next morning defendant sent her personal belongings to her parents' home,  by truck.   Defendant's version does not quite agree with this, and he particularly denies that he used any violence, but does not deny that he refused to eject his nephew, the pugilist, and that he at least assented, if he did not direct, that the complainant should go home to her parents and stay there.   Defendant has been, as above

stated, held as a disorderly person and required to give a bond conditioned for the payment of fifteen dollars per week for one year.

A careful reading of subdivision 1 of section 899 of the Code of Criminal Procedure would seem to indicate that it, if taken literally, provides for three states of affairs; and that if any one of them exists the defendant would be a disorderly person. Disorderly persons are defined as persons who (a) "actually abandon their wives and children without adequate support;" then follows the disjunctive "or;" (b) "leave them in danger of becoming a burden upon the public;" then the disjunctive "or" appears again, with the third definition, (c) "who neglect to provide for them according to their means." Rather curiously all the numerous cases bearing upon the paragraph seem persistently to construe it as if the word "or" was "and." Closely analysing the paragraph in question it would seem that the provisions which I have quoted as "a" and "b" above are more or less definitely involved together, that is, that "b" amounts to nothing more than a corollary of "a." Assuming that to be so, there still remains "c" which defines "neglecting to provide for them according to their means," and which, giving due consideration to the preceding "or," would seem to define a situation which would make a husband a "disorderly person" if he neglected to provide for his family according to their (or his) means, irrespective of what the result might be and whether they were in danger of becoming "a burden upon the public," or not. Something of this sort seems to have been attempted to be established in *People* v. *DeWolf* (133 App. Div. 879). However, it is noteworthy that both the prevailing and dissenting opinions consider the financial condition of the complainant, and seem to treat it as an essential element (pp. 881 and 883).

I am unable to find any case, notwithstanding the last provision contained in subdivision 1 of section 899, which holds that a husband is a disorderly person who fails to properly support his wife or children *unless* it follows that they are "in danger of becoming a burden upon the public." I think we must, therefore, consider that as the settled law of the State, notwithstanding what appears to be the contrary language of the Code section in question.

In the present case the complainant testified that she was without any means of income whatever; that she was in bad health, a condition which she blamed the defendant for, and she ventured the opinion that she would be unable to work for a year. She was living at the time of the trial with her parents; and it appeared on cross-examination that they owned the house they lived in. Nothing else was brought out with reference to their means. It also appeared on cross-examination that the complainant had the

trade of " winder " in a fish-rod factory; and that she also had about three months' instruction in stenography. It finally appeared that she had no employment, and she said she was unable to get any. I do not assume that the fact that the complainant has a trade, or perhaps two trades, in the face of the fact that she has no employment, is to be very seriously considered in this connection. The Appellate Division, in *People* v. *Smith* (139 App. Div. 361, at p. 363), seems in a similar case to be (if I may say so) unduly impressed with the fact that the complainant " is shown to have had at least three or four dollars in her possession at the time of the commencement of the proceeding" (she also owed some doctors' bills and some coal bills); but this complainant does not admit to having *any* money. I think we are brought squarely to the question of whether the fact that complainant was living at the time of the trial with her parents will remove her from the requirement of the statute that she is " in danger of becoming a burden upon the public." It is held in rather numerous cases that this is the main point involved; that the proceedings we are considering are not designed to supplant or take the place of matrimonial actions or settle matrimonial differences, and that the main concern of the courts in these cases should be the deciding summarily whether there is any danger of complainant becoming a public charge. Again, I will say that this construction does not square with my reading of the statute in question, which I would think might and should be construed to make a man a disorderly person who " neglects to provide for them [his wife and family] according to their means," quite irrespective of whether the wife and children might be on the verge of going to the poor house, or are living upon the charity of the wife's parents or neighbors. Keeping in mind, however, what seems to be the prevailing opinion with reference to the law involved, I will assume that, if it were shown in a case like this that the deserted wife had parents, or a parent, who was well-to-do and willing to support their daughter, in such a case the holding would have to be that the neglectful husband was not " a disorderly person." In the case at bar there is no evidence of the wife's parents being in such a financial condition that they are able to assume the support of their married daughter and thereby relieve the defendant from all claims in that direction; and I feel that I should hold the situation to be such that the defendant, in view of all the testimony in this case, is amenable to the law, notwithstanding that his wife's parents may own a house — whether mortgaged or otherwise does not appear.

We come to the question of whether the defendant had " actually abandoned " his wife. If the dictum in *Weigand* v. *Weigand* (103 App. Div. 42) is a correct statement of the law, apparently the

defendant could not be held. The court said: " It is not claimed that the defendant abandoned the plaintiff. *She was obliged to leave him.* There was, therefore, no abandonment or desertion by him within the purview of the provisions of the Code of Criminal Procedure (§§ 899–901)." This pronouncement is founded upon citations to six cases, all of which I have examined carefully, and none of which holds what is quoted above, or anything very nearly approaching that. It is supposed that a husband might by violence and continued bad conduct make life so unbearable in the house that the wife would be justified in quitting it, and that such conduct on the husband's part might be regarded and treated as an " abandonment." The above decision seems to be to the contrary. The case arose in another department, and the declaration quoted was made in a separation action, and was, therefore, *obiter dictum*, in view of which fact and also in view of the utter lack of support given to the dictum by the citations upon which it is apparently founded, I do not feel that it should be followed here. It was said in *People ex rel. Commissioners* v. *Cullen* (153 N. Y. 629, at p. 639) that " abandonment cannot mean anything more than desertion." There are many cases in which the question of whether the wife was justified in leaving her husband's home, by reason of his misconduct, was treated as a question of fact, and these cases do not hold by any means that she could not be deserted or " abandoned " in case she was forced to leave her home, and justified in so doing. *People ex rel. Douglass* v. *Naehr* (30 Hun, 461) was such a case. The court said: " It is only when he neglects or refuses to properly provide, or maltreats her, or is guilty of infidelity to her, that she is justified in refusing her submission to his reasonable requirements in this respect," meaning as to *where* she or they should live. *People* v. *De Wolf* (133 App. Div. 879) was another such a case, with the facts not dissimilar to the case at bar, except that it was defendant's mother instead of his nephew who constituted the bone of contention. The court in that case decided that the wife was not justified in leaving defendant's home, but treated it as a question of fact, simply deciding it adversely to the wife. In *People* v. *Paaschen* (105 Misc. 417, at p. 421) the court said: " He abandoned her, because he did not offer her a home under such circumstances as she was bound to accept as his wife within the meaning of the law." And again, on page 422, the court said, quoting from *People ex rel. Douglass* v. *Naehr* (*supra*): " When the husband is guilty of infidelity to the wife she is justified in not following him wherever his interest or necessity may lead."

I think it may be held in this case that the act of the defendant in taking his wife, even if it was at her request, to her mother's

home and leaving her there, and telling her to stay there, amounted to an "abandonment."

I have not lost sight of the fact that the defendant has controverted some of the claims of the complainant. It is to be borne in mind that what is occurring in this case in this court is not a trial *de novo*, but a review of a judgment in the City Court of Utica, without a new trial. The City Court has found in favor of the complainant upon all the controverted questions of fact. Under such a situation I can only reverse the decision of the court below, where it appears that the decision of that court was so clearly against the weight of the evidence that the court could not reasonably have arrived at the decision which it did. (*Murtagh* v. *Dempsey*, 85 App. Div. 204, 205.) The rule set forth in the citation last named was promulgated in a civil action, but something like that rule must certainly obtain in criminal cases. Criminal appeals are governed mainly by section 764 of the Code of Criminal Procedure; but I do not consider that anything therein to be found justifies the appellate court in interfering with a judgment upon the facts unless it is clearly and obviously wrong, and nothing of that sort appears in this case. In view of all the evidence in the case and particularly of the fact, and it undoubtedly is a fact, that the defendant knows more about his financial condition and his earnings than does the complainant, I think the amount of the weekly payment should be reduced from fifteen dollars to ten dollars.

The judgment may be modified by reducing the weekly payment to ten dollars per week, and as so modified will be affirmed.