## Court of Appeals.

October 5, 1897.

## PEOPLE ex rel. COMMISSIONERS OF PUBLIC CHARITIES AND CORRECTION v. CULLEN.

1. CRIMINAL LAW—APPEAL.

Section 20, chap. 601 of 1895, which gives the right to appeal to the court of appeals from a judgment of the court of special sessions in the city of New York, is constitutional.

2. SAME.

The legislature has the power to enact a statute providing for a final review in the court of appeals of a judgment or order made by a magistrate, convicting a party as a disorderly person.

3. SAME—DISORDERLY PERSON.

The offense of abandoning or deserting a wife, if not a crime within the meaning of the Penal Code, is clearly of a criminal nature, and it is incumbent upon the people to prove it.

4. SAME.

Though it is the duty of the husband to support his wife, he is not bound to support her away from his home, even though such home may be disagreeable to her.

5. SAME.

Abandonment, in the sense in which the term is used in the statute means the actual and willful desertion by the husband of the wife.

6. SAME.

  After a judicial separation at the suit of the wife, the relation is so far terminated or suspended that the husband cannot be guilty of abandonment or desertion in any legal sense.

7. SAME.

  If the wife herself procures, or consents to, the separation, the case does not come within the statute.

8. SAME.

  The fact that the court in the decree of separation made no allowance for the wife, does not change the situation.

Appeal from a judgment of the appellate division, reversing an order of the general sessions, affirming an order made by a police justice.

Payson Merrill, for appellant.

Percy McElrath, for respondents.

O'BRIEN, J.—The defendant was tried before one of the city magistrates of the city of New York, and was adjudged to be a disorderly person, in that he had abandoned his wife, and had left her in danger of becoming a charge upon the public. The proceeding was instituted before the magistrate upon a verified complaint of the wife on the twelfth day of August, 1896. The trial resulted in a conviction on the twelfth day of December, 1896, and the defendant was thereupon ordered to pay to the commissioners of public charities the sum of $8 per week for one year for their indemnity, and for the support of his family in the meantime. It appeared that the defendant and the complainant were married in the year 1862, and that they separated in 1868, since which time they have not lived together. There is no issue of the marriage. It further appeared that on the fifteenth day of October, 1883, in an action for separation from bed and board, instituted by the wife in the superior court, judgment was entered upon her motion that the parties be separated from bed and board, and that the defendant pay the costs of the action. The judgment recited that it appeared from the report of a referee that the present circumstances and abilities of the defendant are such that he cannot personally pay any sum whatever for alimony and counsel, and no sum was.

allowed for either purpose. The judgment, however, contained a clause to the effect that, in the event of the pecuniary circumstances of the defendant becoming materially changed, touching his ability to support his wife, an application for that purpose might be made at the foot of the judgment, by any party in interest, for a modification of the judgment touching the support of the wife, or any other matter as might appear to be just. The conviction of the defendant upon these facts was reviewed and affirmed by the court of sessions, and subsequently by the appellate division of the supreme court. Until the enactment of a recent statute, this court had no power to review a judgment originating in such a proceeding. People v. Cullen, 151 N. Y. 54, 45 N. E. 401. But, by chapter 601, § 20, Laws 1895, provision is made for an appeal to this court from such a judgment when adverse to the defendant.

The learned counsel for the people contends that this statute is unconstitutional and void, and moves to dismiss the appeal. This contention is founded upon the provisions of article 6, § 9, of the constitution, regulating the jurisdiction of this court, and providing that the legislature may further restrict this jurisdiction. It was never supposed that there was anything in the constitution to prohibit the legislature from enlarging the jurisdiction of this court, and extending it to new cases, from time to time, as it thought proper, save only in those special cases enumerated in the article, which are expressly withdrawn from review. The jurisdiction must be confined to questions of law, and in some cases the unanimous decision of the appellate division is made final. These limitations are, of course, binding upon the legislature, as well as the courts, and cannot be transcended. But, subject to these provisions, it is entirely competent for the legislature to provide for a review in this court of any question of law involved in a judgment after a hearing in the appellate division. The power to further restrict appeals does not, by any fair or reasonable implication, exclude the power to enlarge the jurisdiction by providing for a review of certain judgments of inferior courts that were not reviewable before. The questions that may be considered in such cases are, of course, limited by the restrictions contained in the constitution ; but the sole question here is whether the legislature has the power to enact a statute providing for a final review in

this court of a judgment or order made by a magistrate convicting a party as a disorderly person. There is no good reason to doubt the existence of such power. The judgment or order must be one entered upon the decision of the appellate division finally determining some action or special proceeding, when the appeal is given as matter of right. None of the limitations upon appeals to this court contained in the constitution have been ignored by the statute in question, and so we think the jurisdiction to review the decisions below is clear.

The question is purely one of law, whether, upon the undisputed facts presented by the record, the defendant had abandoned or deserted his wife, within the fair meaning of the statute. The charge of which the defendant was convicted, if not a crime within the meaning of the Penal Code, was clearly of a criminal nature, and it was incumbent upon the people to prove it. The statute is summary, highly penal, and should be strictly construed. People v. French, 102 N. Y. 583, 7 N. E. 913; People v. Pettit, 74 N. Y. 320; People v. Naehr, 30 Hun, 461. It is the duty of the husband to support his wife, but he is not bound to support her away from his home, even though such home may be disagreeable to her. The statute under which the defendant was convicted evidently contemplates the actual existence of the marriage relations. After a judicial separation at the suit of the wife, the relation is so far terminated or suspended that the husband cannot be guilty of abandonment or desertion in any legal sense. The judgment operated to change the contract relations between the parties, and required them to live apart from each other. The wife was relieved from her marital duties, and the husband's obligation to support her could not remain as it was before. It was no longer possible for him to discharge it in the sense that the marriage state contemplates. In such cases the court generally substitutes, in place of the contract obligation to support, recognized by the common law, a provision for suitable maintenance, according to the circumstances of the parties, to be paid by the husband, or from his estate. When a judicial decree of separation from bed and board has once been pronounced, the common-law obligation to support the wife, if not entirely abrogated, is greatly modified. Alimony then becomes the regular measure of

the husband's obligation. It is granted or withheld always in furtherance of justice, and the amount is regulated by the exercise of a sound discretion, according to the circumstances of the parties. When the marriage bond was modified by the decree of separation, the legal obligation to support the wife in the sense that it existed before ceased, and in its place was substituted the power of the court to appropriate some part of the property or earnings of the husband to that purpose, as justice might require. Kamp v. Kamp, 59 N. Y. 212; Romaine v. Chauncey, 129 id. 566, 29 N. E. 626; Galusha v. Galusha, 116 N. Y. 635, 22 N. E 1114; Wetmore v. Wetmore, 149 N. Y. 520, 44 N. E. 169; Schouler, Husb. & Wife, § 118; 2 Pars. Cont. p. 85; Tyler, Inf. p 924, § 700. In this respect, there does not appear to be any difference between an absolute and limited divorce, based upon the misconduct of the husband. In neither case can there be an abandonment or desertion, within the meaning of the statute. The statute was never intended to apply to a case like this, where the obligations of the marital contract have been modified by a decree of the court, and where the defendant is guilty of no act, except to obey the decree.

It is quite true, as the learned counsel for the people contends, that the judgment in the divorce action did not dissolve the marriage. The parties still remained husband and wife in the eye of the law. Neither the husband nor the wife was competent to contract a new marriage. But, practically, the duties and obligations of the marriage relation were radically affected and wholly changed. The wife had been relieved from all her obligations. She was no longer bound to perform any of the duties of a wife.

If it be said that the husband was still under obligations to support the wife, the question arises, how was he to discharge this obligation? Certainly not in the manner contemplated by the marriage contract, and enjoined by the common law, since they had been separated by the decree of a competent court. The marital duty of the husband to support the wife always presupposes the fact that they are living together as husband and wife. This obligation, in its proper sense, contemplates an actual union of the two parties, maintaining to each other the practical relations

of husband and wife. When they have been separated by the judgment of a court for the misconduct of the husband it is true that the obligation of the husband is not wholly terminated, but it assumes another form, and rests upon different principles. Their duties and obligations towards each other during the separation are just what the court may have prescribed, and no other. Those implied from the actual existence of the marriage relations have ceased, or are suspended, and the provisions of the decree of a court of equity have been substituted in their place. An action for a limited divorce is really an appeal to a court of equity by one of the parties to a marriage contract for a modification of the marriage relations, duties, and obligations as they exist at common law. The court is virtually asked to change and readjust these relations, and to prescribe such new duties and obligations to be observed by the litigants as justice may require. Such a decree, when made, is the charter that, during the separation, must regulate the obligation and duties of the parties. They cannot be regulated by the decree and the common law at the same time. The two methods of enforcing the marital duties and obligations are wholly inconsistent with each other. They proceed upon theories, and are based upon principles, so radically different, that both cannot operate together. The decree, so long as it remains in force, must be presumed to contain all the provisions for the support of the wife that justice required, or that the circumstances of the husband would warrant. If, by reason of changed conditions and circumstances, it becomes unjust to either party, the remedy is to apply for its modification. The statute in question cannot be made to take the place of the decree. It was not intended to apply to a case where the wife had procured from a court of equity a readjustment of her marriage relations. It has been adjudged by the decree that the defendant, by misconduct, has forfeited all right to the services or society of his wife, and yet the husband has been convicted of an offense of a criminal nature, for failing to do something that the decree does not require him to do. It may be that the husband ought, in justice and equity, to be compelled to support his wife, or to contribute to her support. That is a question of which the divorce court has still jurisdiction, and it must be presumed that when appealed to

by the wife it will determine her claim in conformity with jus-
tice.   But the question here is whether the husband has com-
mitted the statutory offense of desertion or abandonment.   The
criminal law does not, as a rule, deal with acts or motives that
are merely constructive.   It deals with the actual conduct and
motives of men.   Abandonment, in the sense in which the term
is used in the statute, means the actual and willful desertion by
the husband of the wife.   It is the willful act of actually leaving
her, or separating from her, and the withdrawal of all aid and
protection implied in the marriage relations.   If the wife herself
procures the separation, or consents to it, the case does not come
within the statute.   It cannot be the result of an agreement, or
affected by the judgment of a court, but must be what is known
to the criminal law as willful and voluntary desertion or aband-
onment.   In Fitzgerald v. Fitzgerald, L. R. 1 Prob. & Div. 694,
the court thus stated the rule applicable to the construction of a
similar statute :   " No one can desert who does not actively and
willfully bring to an end an existing state of cohabitation.   If the
state of cohabitation has already ceased to exist, whether by the
adverse act of husband or wife, or even by the mutual consent of
both, desertion, in my judgment, becomes from that moment im-
possible to either, at least until their common-law life and home
have been resumed."   And desertion or abandonment has been
defined in substantially the same language in other cases.   Pape
v. Pape, 20 Q. B. Div. 76; Thompson v. Thompson, 1 Swab. & T.
231.   The same or similar terms, when used in the law of marriage
and divorce, have been defined by this court, and it is held that
desertion means the willful and voluntary separation by the hus-
band from his wife without justification, and with the intention of
not returning.   Williams v. Williams, 130 N. Y. 193, 29 N. E.
98.   Abandonment cannot mean anything more than desertion.
When used to characterize the act of the husband, the words are
generally used interchangeably.

The fact that the court in the decree of separation made no al-
lowance for the wife does not change the situation.   The court
did exercise its power and discretion on the subject, and held
that the pecuniary circumstances of the defendant would not war-
rant an allowance then, but left it open to the complainant to ap-

ply for alimony whenever the pecuniary circumstances of the defendant changed. This remedy has always been open to the wife, and is open to her still. If the defendant has any pecuniary ability to contribute to his wife's support, the divorce court has the power to modify the decree. If he has not, then there is really no ground for this proceeding. The age and physical condition of the defendant leave no room for the supposition that he is capable of earning anything for this purpose.

We think that the charge of abandonment was not sustained by the facts, and that the conviction of the defendant, under the circumstances, was erroneous. The defendant had not abandoned his wife, within any fair interpretation of the statute. The order of the appellate division, the special sessions, and the magistrate should be reversed, and the defendant discharged.

All concur, except GRAY, J., absent.

Order reversed.