Matthew M. Levy, J.
(I)
The plaintiff — successful in her suit before me for a separation on the ground of inadequate support and abandonment — has moved to amend the findings made and the judgment rendered after trial so as to increase the allowances granted to her.
In her submission, the plaintiff alleges that her husband is a person of considerable wealth and income, and argues that I overlooked that factor in my decision. I did not. The fact is that, in her desire to obtain the result sought, the plaintiff has fallen into the error of de-emphasizing entirely the preseparation standard of living of the parties— and the authorities are agreed that this cannot be done.
Thus, in Hearst v. Hearst (3 A D 2d 706, affd. 3 N Y 2d 967) noting (of course) that there were other factors also to be considered, the court held that: “ A wife is not entitled to share in a husband’s income as such, but is entitled to support on the basis of the established standard of living, if otherwise reasonable, within the income of the husband. * * * Plaintiff shows on this record, and in her argument, only that the husband has an income many times larger than the permanent alimony allotted to her. That is not enough. ’ ’
In Borchard v. Borchard (5 A D 2d 472) the defendant was a man of considerable worth (p. 477). Nevertheless, the Appellate Division substantially reduced the amounts granted by the trial court in the judgment of separation since it appeared that the awards were based upon findings related to defendant’s assets and earning capacity. This was held to be erroneous because (as theretofore stated in Hearst, supra),/1 plaintiff is not entitled *124 to share in the husband’s income as such. The burden assumed by plaintiff was to establish the standard of living of the parties within the income of the husband. In this case that burden has been barely sustained ” (p. 479).
And so in the case at bar. That the plaintiff here has completely ignored this criterion is peculiarly pointed up in the suggested findings of fact, conclusions of law and judgment submitted by her for my signature. Throughout, the plaintiff repeatedly noted the defendant’s means and income, and no mention whatsoever was made of the 11 ‘ same style and in the same manner ’ of living ” before the parties came to a parting of the ways (Shapiro v. Shapiro, 8 A D 2d 341, 342). Since I took this basic factor into account (among others as well, including that of the plaintiff’s needs), I did not accept her proposed findings, conclusions and judgment as presented, but made the appropriate corrections therein, and, as thus modified, they became the formal decision and final judgment which I signed (CPLR 4213; 5016, subd. [c]). Other authoritative cases are to the same effect and I see no need to do more than cite them (Tirrell v. Tirrell, 232 N. Y. 224, 230; Stahl v. Stahl, 16 A D 2d 467, 468; Patton v. Patton, 5 A D 2d 860; cf. Phillips v. Phillips, 1 A D 2d 393, 398, affd. 2 N Y 2d 742).
It is of applicable moment to note that, in the Borchard case (supra) the Appellate Division pointed out (pp. 477-478) that, “In general [the amount of alimony] is decided by consideration of several factors (cf. Phillips v. Phillips, 1 A D 2d 393, 398). Usually, however, the balancing of these factors is of greater relevancy when awarding alimony from a modest income ’ ’; but, when the case involves ‘ ‘ determining the amount to be paid by a husband of wealth and a substantial income, the other factors become of less importance and the search becomes to a large extent one to determine the standard of living of the parties.”
Indeed, in Orenstein v. Orenstein (26 A D 2d 928, 929, affd. 21 N Y 2d 892) the Appellate Division said that “ In the absence of special circumstances * * * a former matrimonial standard of living based on capital expenditures is not a proper basis for permanent alimony.” There are no relevant special circumstances here, except that I went so far as to consider the probability that these parties (as do many parents of children attending schools of higher learning) did “ forego, to some extent, otherwise desired financial benefits from their own resources in favor of their children’s education.”. (Winkler v. Winkler, 13 A D 2d 924, affd. 11 N Y 2d 693); and I took cognizance of the *125 fact that the elder son of the parties had become largely self-supporting since the defendant’s abandonment of the plaintiff. Accordingly, I fixed the amount of the alimony to be paid the plaintiff somewhat above the proven standard of living of the parties prior to the separation.
It is not to be assumed, therefore, that, in fixing the payments required to be made to her and in her behalf, I ignored the defendant’s capacity to pay, as proved. Bearing in mind what has been shown by way of evidence — as distinguished from what the parties have alleged — the factors referred to in section 236 of the Domestic Relations Law, as indicated in the formal findings of fact signed by me, have been my guidelines.
(II)
The learned Justice presiding in the motion part in Bings County (before venue herein was changed to New York County) awarded the plaintiff a certain sum for services to be rendered by her attorney, which sum was to include the trial of the issue of plaintiff’s right to a separation, and was without prejudice to a further application by the plaintiff to the trial court for an additional allowance. Such further award was granted by me after the trial, and the plaintiff, complaining of its alleged inadequacy, also seeks to amend the decision and judgment in that regard.
Subdivision (a) of section 237 of the Domestic Relations Law provides, among other things, that “ the court may direct the husband * * * to pay such sum or sums of money to enable the wife to carry on # * the action * * * as, in the court’s discretion, justice requires, having.regard to the circumstances of the case and of the respective parties.” I recognize, of course, that ‘ ‘ Included ■ particularly within the ‘ circumstances ’ to be considered are * * * the income and means of the husband ” (Wood v. Wood, 21 A D 2d 627, 630).
But, in fixing the allowance in this case, there are several other elements that cannot be ignored. Among them are (1) the necessity, as against the actual motive, for the litigious process undertaken; and (2) the reasonable value of the particular service rendered.
In the light of the allegations contained in the plaintiff’s motion papers, I reviewed the record, both in Kings Comity and here. Keeping in mind the proven facts and all the factors involved, I am of the opinion that the award is adequate, and my conclusion is that no change is warranted.

*126
(III)

The plaintiff also objects to the phrase in the judgment (inserted by me after a recital of the prior proceedings in the case and before the decretal provisions) that “it is now on motion of Julius Zizmor, Esq., attorney for the plaintiff ”, that certain things are ‘ ‘ Ordered, Adjudged and Decreed ’ ’, including the granting to the plaintiff of a judgment of separation (on two of the three grounds sued upon by her), providing for certain alimony (not as much as prayed for by the plaintiff), directing the payment of additional counsel fees to the plaintiff’s attorney (not in the amount requested by him), and requiring the defendant to do certain other things and make other payments (not all in the manner or to the extent demanded by the plaintiff).
The plaintiff contends that, because the proposed judgment was not accepted without change and not signed as submitted by her, but was corrected and modified in several respects by the court, the variance makes improper the recital that the decree was rendered on motion of her attorney. I disagree.
By definition, a judgment is 1 ‘ the determination of the rights of the parties in an action ’ ’, and the CPLR provides that, in a contested action, the judgment ‘1 shall refer to, and state the result of the verdict or decision ” (CPLR 5011). There is no other statutory requirement as to what the content of the judgment shall be. But CPLR 5016 (subd. [c]) provides, in that part pertinent to the present application, that : 1 ‘ When relief other than for money or costs only is granted [as in the case at bar], the court or referee shall, on motion, determine the form of the judgment.” (Emphasis supplied.)
Though, happily, no longer encumbered by the technical text of earlier times, the modern-day judgment — both in form and wording — continues to follow the essentials of the traditional equity decree. A judgment will be considered to have been drafted in a professionally workmanlike manner and complete in its component parts, if it contains the caption, the title, and the reciting part (which, as has been noted, must also make appropriate reference to the verdict or decision, as required by CPLR 5011) followed by the ordering or decretal part, setting forth in unmistakably clear language the relief to which the party applying for the judgment is entitled (see Breitel, J., in Benadon v. Antonio, 10 A D 2d 40, 43; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5011.04).
Although not necessary to the validity of the judgment itself, good practice warrants and supports the inclusion of the name *127 of the attorney and the identity oí the client whom he represents, and upon whose motion the form of the judgment and the relief proposed are to be determined. And the recognized form books usually provide a recitation or declaration accordingly (see, e.g., 8 Carmody-Wait 2d, New York Practice, § 63:5 et seq.).
The question then arises: On whose “ motion ” is it that the court has acted in undertaking to “ determine the form of the judgment ” to be entered in the case at bar as required by the statute? The litigation back, binding the several pages of the final judgment, was that of the plaintiff’s attorney — not the defendant’s, whose proposed judgment was in fact rejected by me.
It cannot be validly argued by the plaintiff that the judgment awarding her the separation which she demanded in her complaint and presented for my signature was granted on the motion of the defendant. Indeed, he contested her suit and opposed the separation. Nor can it be fairly urged by the plaintiff that the separation was granted on the court’s own motion — particularly when (as here) there was no basis for judicial intervention or action unless the plaintiff as proponent had instituted and prosecuted the suit; and, far from intervening to decree a separation for this sad and unhappy couple (who were twice married to each other), the court utilized every conciliatory means available to bring them together again. And it would be foolhardy to assume that insofar as a decretal clause is wholly favorable to the plaintiff it should be stated that it was included in the judgment on motion of the plaintiff; that if a particular clause is wholly favorable to the defendant the statement should be that this provision was decreed on his motion; and that if a portion of the judgment is partially favorable to each, then it must be stated that it was on motion of both that it was so adjudged.
The plaintiff contends that her right to appeal from the judgment is adversely affected by the declaratory notation which she seeks to strike therefrom. She is in error. That the judgment submitted by the plaintiff Avas corrected and modified by the court amply appears from even a casual inspection of the document itself, as well as in the formal publication in the New York Law Journal of December 16, 1968 (p. 16, col. 2). As has been hereinbefore noted, OPLB 5011 defines a judgment as “ the determination of the rights of the parties The decreta 1 provisions therein would in any event be the adjudication of the court, and not of the moving or adverse party. It is the litigant Avho propoRos. Tt is the court, that determines in accordance rvith ÜH ÍÍT1CÍÍT1KR IXHcl V-OUvl IIRÍOUR.
*128 Assuming entry of judgment, the 30-day time to take an appeal as of right begins to run, not on the basis of on whose “ motion ” it is presented to the Judge for signature, but from the date of “ service upon the appellant of a copy of the judgment or order appealed from and written notice of its entry ” or, if “ the appellant has entered the judgment or order or served notice of its entry ”, from the date when he did either (emphasis supplied) ; (see CPLR 5513, subd. [a]; Matter of Stuart & Stuart v. New York State Liq. Auth., 23 N Y 2d 493; see, also, Matter of Katz [Almond] [Local 1115A Health, Welfare and Serv. Fund], 39 Misc 2d 295, app. den. 18 A D 2d 635, mot. for rearg. and lv. to app. den. 18 A D 2d 785, mot. for lv. to app. granted 18 A D 2d 969, revd. 13 N Y 2d 924).
In the Stuart case (supra, p. 495) the Court of Appeals points out that certain orders or judgments are automatically entered when signed by the Judge — without any further action being required on the part of either party. In such a case, the time to appeal will run against the party who submitted the proposed order with notice of settlement from the date of automatic entry (People ex rel. Manhattan Stor. & Warehouse Co. v. Lilly, 299 N. Y. 281; Matter of Stern Bros. [Livingston], 2 A D 2d 553, affd. 3 N Y 2d 964). There are, however, some orders or judgments that will not be automatically entered. In such a case, one of the parties must request that it be entered — and the time to appeal will not begin to run until the clerk is presented with the order or judgment and does in fact enter it. (See Stuart, supra, pp. 495-496.) The present is such a case. I take judicial notice of the practice of this court in this county in respect of entry of judgments in matrimonial actions, as follows: When the action is not contested, the judgment will be automatically entered. If the action is contested (as in the case at bar) entry by the clerk must be requested by one of the parties, and the judgment will not be entered unless so requested. Indeed, the judgment here has not yet been entered, although it was signed by me on November 30, 1968.
In any case (assuming that I am in error in holding that proper practice and procedure require, or at least render appropriate, the declaration in the judgment as to which party moved to have its form determined), I would conclude that, whether the notation objected to by the plaintiff is in or out of the judgment, it is inconsequential, and that, since it is in consonance with the fact, and further, since there is no showing that the deletion if deniíddlCed ^ Hs inclusion* her motion to direct its
*129 (IV)
I take this opportunity to discuss another matter as to the form of the decree, which — although not raised by either party prior to the rendition thereof or on the present application — has given me some concern. That matter poses the inquiry: Must the alimony and support provisions of this final judgment of separation be set forth in one lump sum to cover all items; or, in the circumstances of this case, may some of the various items of expense required to be paid by the defendant be provided for separately?
The latter format was utilized here, and the question is whether that was proper. I shall first analyze the relevant causes of the decree.
The final judgment provided that the defendant pay to the plaintiff the sum of $210 per week for her support and maintenance; and, in addition thereto, the defendant was required to make certain other payments in respect of her living quarters and care of her health. And also the infant issue of the marriage was to be supported by the defendant as in the judgment provided. To understand the problem, each of these directives requires explicit delineation.
In .respect of issue of the marriage, there are two sons. At the time of the trial, one was 23 years of age and the other 20. The adult is employed in the defendant’s business, and the cost of this son’s psychiatric care is separately borne by the defendant. As to the near-adult, I provided in the judgment that the required support for him (except living quarters at the former marital home) was to be paid for by the defendant directly to him — $70 per week “ for the cost of food, clothing, books, college registration, and other necessities, and, in addition thereto, shall pay for the dental, psychiatric and medical care, if any.”
As to the home owned by the parties and — since the abandonment— occupied by the plaintiff wife and their younger son when he wishes to do so, I directed that the house continue to be in the “ sole and exclusive possession ” of the plaintiff “ for the purposes of her residence and that of the infant of the parties ”. As reconstructed after several proposals submitted by counsel for the respective parties, the judgment signed by me required the following separate payments to be made by the defendant “ for the upkeep of the real property” aforesaid “ as follows: for the interest and the instalments of principal when due on the first mortgage held by Flatbush Savings Bank or its assignee; the taxes, water rates, sewer rents assessed by the City of New York; insurance premiums on fire, extended *130 coverage, liability, boiler and personal property on and in the premises in appropriate amounts; and in addition thereto, the defendant shall pay for all heating and hot water in respect of said premises in a sum not to- exceed $500 per annum; and in addition thereto, pay for all necessary repairs made by the plaintiff therein, as well as repairs to plumbing, heating, painting, carpentry work and gardening made by plaintiff in a total sum not to exceed $500 per annum.”
The present judgment also requires separate payment by the defendant of certain future expenses of the plaintiff, the amounts of which are not presently ascertainable. These pertain to her “medical, dental, hospital, optometrist and podiatrist care”, and, in addition, “ for her dental work now necessary in a sum not to exceed $2100 ”. (The plaintiff’s request that the defendant also be required to pay specifically and separately for her “ psychiatric care * * * drugs and medicines necessary for her health and welfare ” was denied.)
All of the items pertaining to the support of the infant son of the parties and to the maintenance of the marital home were separately provided for in the proposed findings, conclusions and judgments submitted by both the plaintiff and the defendant. And the plaintiff requested similar provisions as to her personal medical and related care. The defendant did not so provide; but he did propose 21 days ’ hospitalization and medical insurance. I did not find it feasible to determine with adequate specificity the likely future cost of all the plaintiff’s and the son’s required medical care; therefore, because of the nature of their proved illnesses, I increased somewhat the weekly support allowance I would have otherwise awarded to the plaintiff and, as has been noted, also provided separately for certain medical and related treatment for her and him. And, on the score of insurance in that regard, the final judgment as signed by me mandates the defendant to maintain Blue Shield and Blue Cross coverage, which will include, among other things, 90 days of institutional care for the plaintiff.
The statute — as a grant of judicial power — is plain and positive. Direction to the “ husband to provide suitably for the support of the wife, as in the court’s discretion, justice requires * * * may require the payment of a sum or sums of money either directly to the wife or to third persons for real and personal property and services furnished to the wife, or for the rental of or mortgage amortization or interest payments, insurance, taxes, repairs or other carrying charges on premises occupied by the wife, or for both payments to the wife and to such third persons.” (Domestic Relations Law, § 236.) As to *131 occupancy of property, it is provided in section 234 of the same law that the court may ‘ ‘ make such direction, between the parties, concerning the possession of property, as in the court’s discretion justice requires having regard to the circumstances of the case and of the respective parties.” And, as to a child of the parties, “ Such direction may make provision for the education and maintenance of such child * * * [and] may require the payment of a sum or sums of money either directly to the wife or to third persons for goods or services furnished for such child, or for both payments to the wife and to such third persons.” (■§ 240.)
The legislative history emphasizes the statutory permissibility. The 1961 Report of the Joint Legislative Committee on Matrimonial and Family Laws says: 1 ‘ The second sentence of the proposed Section 1169 [which became section 236 of the Domestic Relations Law] authorizes a direction that payment be made to a third person. This is new as a matter of legislation, although not as a matter of practice. Questions are constantly arising concerning the practice, however, and it would seem wise to give it statutory endorsement ” (N. Y. Legis. Doc., 1961, No. 19, p. 82; see, also, the Committee’s 1963 Report; N. Y. Legis. Doc., 1963, No. 34, p. 88).
Nevertheless, I confront myself with several recent decisions of the Appellate Division in this Department which give me pause. The latest is Matter of Grossman v. Ostrow (31 A D 2d 797). The facts in that case were these: A separation agreement was incorporated into a judgment of divorce rendered by the Superior Court of the State of New Jersey. By its terms, the agreement survived the decree. It itemized certain maintenance payments which were to be made by the father in behalf of the child of the marriage — such as support; medical, dental and hospital expenses; tuition for a private school if the child attended one; and expenses related to a subsequent college education. On application of the mother in the light of alleged increased needs of the child and of asserted changed economic circumstances for the better on the part of the father (Family Ct. Act, § 461), the Family Court increased the amount of support, and also separately directed the father to pay for the cost of the private school, the expense of summer camp for the youngster, and the cost of the child’s medical, dental and hospital attention, and of psychiatric therapy. The Appellate Division, modifying the Family Court order, had this to say: “ While circumstances may occasionally appear which require a different disposition, we think the more desirable practice is to make an inclusive award of a specified sum rather than direct pay *132 ments of indefinite amounts to third parties,” citing Schine v. Schine (28 A D 2d 976), Macris v. Macris (29 A D 2d 528) and Sklan v. Sklan (29 A D 2d 526). To this group may be added Furst v. Furst (30 A D 2d 955).
What the circumstances are that might warrant a ‘ ‘ different disposition ”, the court does not say in any of the cases; and I have therefore undertaken an examination of the records on appeal in all of them in an endeavor to discover a clue either as to the reason for the general rule or the criteria for the appropriate exception referred to in the memorandum decisions of the court.
In Schine (28 A D 2d 976-977, supra) the appellate court, on appeal by defendant, modified an order for temporary alimony by deleting therefrom the monetary provisions for the payment of rent and utilities, and medical costs and children’s school expenses, and, in lieu thereof, required that defendant pay to plaintiff a specified sum weekly “ for all such purposes ”. In so holding, the court stated that: “ We deem it unwise to order a husband in general terms to pay future expenses which are normally incurred with his consent and which after the entry of an order in a matrimonial case may be radically increased by the wife or with her approval, above amounts apparently contemplated by the wife and the court when ordered.”
In Sklan (29 A D 2d 526, supra) also on appeal by defendant, the weekly temporary alimony awarded was modified by the reviewing court so as to include therein ‘ ‘ rent and tuition for the issue of the marriage,” because it was deemed “ preferable to provide for a specific dollar award of temporary alimony and support rather than directing the payment of categories of support which may be subject to increase beyond the amount contemplated by the court ” (citing Schine v. Schine, supra).
In a case decided on the same day as was Sklan, the Appellate Division modified an award for temporary alimony to provide for a single amount ‘ ‘ in lieu of all other payments directed in the order to be paid by defendant.” The following language appears in the decision: “ We have hitherto called attention to the fact that as regards payments for support the more desirable practice is to make an inclusive award of a specified sum rather than direct payments of indefinite amounts to third parties (Schine v. Schine, 28 A D 2d 976). While circumstances may occasionally appear where no other practical disposition can be made, the practice should be limited to such instances. Here the important item is for the fixed charges and the maintenance of a family home, owned jointly by the parties and now used *133 exclusively by plaintiff. The extra amount above what was ordered at Special Term, will enable plaintiff to meet her share of those charges, or at her option to provide other comparable accommodations.” (Macris v. Macris, 29 A D 2d 528-529.)
In the Furst case (30 A D 2d 955, supra) citing for purposes of comparison the decisions in Schine and Macris, the court said (pp. 955-956): “We regard the separate provisions for payment of schooling and medical expenses in unspecified amounts as inadvisable, and deem it preferable that an over-all sum be fixed for temporary alimony and child support from which expenses of such nature may be defrayed.”
Although the reasons for the general “ lump-sum ” rule do not appear to be expressed in the cases discussed, I shall presume to fathom and articulate some of them. Perhaps it is thought that it would be unwise, usually, to provide for alimony and support in a completely open-ended fashion, since a specific advance determination as to the future amounts to be paid the wife and child or on their respective behalf would undoubtedly avoid some later controversies. And I am cognizant, too, of the principle — which may be a basis for the Schine holding, also unexpressed — that, before a husband can be punished for contempt, he must be charged with violation of a specific directive, such as refusing to pay a fixed and predetermined sum of money (Sabbeth v. Sabbeth, 2 Misc 2d 64, 65, cited in Glassman v. Glassman, 20 A D 2d 563). It may be, too, that there are tax consequences that the Appellate Division has taken into account — albeit sub silentio. (But, see, 2 Foster-Freed, Law and the Family — New York [1966 ed.], p. 142, § 23:14.) And the court may also have had in mind that, unless the decree is specific as to a fixed amount of future support, the defendant might independently be held liable for necessaries (see Ehrich v. Ehrich, 211 App. Div. 490; cf. Karminski v. Karminski, 260 App. Div. 491; but, see, People ex rel. Commissioners of Public Charities and Correction v. Cullen, 153 N. Y. 629).
Why, then, when I rendered the judgment herein, did I seemingly ignore the import of the cited cases — which so explicitly repeated the rule to be followed?
In the first place, except for Grossman (which involved a Family Court determination), in all of the other cases (Schine, Sklan, Macris and Furst) the order on appeal was granted pendente lite, and pertained to temporary alimony only, which is usually awarded under circumstances in which such factors as necessity, income, means and living standard of the parties while they were together — among other criteria — are based on allegations and estimates contained in papers only and are not estab *134 lished with that degree of the probative definiteness which results from a trial of the issues. The danger of providing for separate payments which may drastically exceed the wife’s needs, the husband’s capacity and the court’s intention does not exist after a trial, in which the facts involved have been proven to a reasonable degree of certainty.
Perhaps, it is this feature which the Appellate Division had in mind when it said in Schine v. Schine (28 A D 2d 976, 977, supra) that “ In determining the amount of permanent alimony and support, if any, the Trial Justice, of course, shall be guided by the evidence, and not necessarily by the temporary amount fixed herein,” and again, in the Sklan case (29 A D 2d 526, supra) that “The award of temporary alimony and support is not determinative of the permanent alimony and support, which will be governed by the evidence at the trial.” But I must frankly state that these passages seem to refer to the quantum of the award, rather than the manner of payment and the recipient thereof; and Grossman (supra), involved a final order after a hearing, not a temporary one in advance of trial. And if section 236 of the Domestic Relations Law is to have any effect at all, it empowers the court to make direction requiring payment by the husband “ either directly to the wife or to third persons for real and personal property and services furnished to the wife ” not only “ in the final judgment ”, but also “ by one or more orders from time to time before or subsequent to final judgment.” (See, too, §§ 234 and 240.) Also, in Patton v. Patton (5 A D 2d 860) it was a Special Term order granting temporary alimony which was modified by the Appellate Division s'o as to provide not only for a specified sum per month but that was to be “plus the continued payment by the husband of mortgage interest and amortization, real estate taxes and insurance on the property owned by [the husband] and * * * occupied by his wife and child.”
There are also other circumstances and factors which led me to differentiate the instant case from those presented in Schine et al.
It will be observed that most of the expenses relating to the maintenance of the former marital home in the case at bar are ascertainable and fixed; and, as to the other items (such as heating and repairs), although not fixed, they were limited by me in amounts — at least so far as the husband’s involuntary liability 'therefor is involved. Since the defendant is a co-owner of this real property (which, by his consent, the plaintiff is occupying, and the upkeep of which he paid for directly when the parties lived together and which he is willing to continue *135 to pay for in that manner), it would seem unjust to deprive him of the right to allocate such payments specifically for such purpose. If the plaintiff is awarded a single lump sum of money for her alimony and support, in lieu of the separate amounts provided for the payment of mortgage amortization, interest, taxes, insurance, necessary repairs, and other maintenance requirements, the defendant’s equity in the property might be jeopardized. In the event of a future dispute between the parties over some unforeseen issue, the plaintiff may be tempted to refrain from making the necessary payments thereon unless they were explicitly indicated in the decree. Also, I came to the conclusion that separate items respecting these payments should be provided for in this case because I was (and still am) of the opinion that the plaintiff might not be sufficiently capable of handling and managing those business matters as are related to the realty.
In Watkins v. Watkins (19 A D 2d 872) decided in 1963, the Appellate Division, modifying on the law and the facts, a separation judgment to the extent, among other things, of directing ‘ ‘ payment by defendant husband of real estate and water taxes and mortgage amortization and interest on the home in Connecticut owned jointly by the parties,” said: “ The [trial] court had power to provide that the wife occupy the house owned jointly by the parties and that the husband pay certain financing and other charges connected with the maintenance of the house (see Domestic Relations Law, §§ 234, 236) ”.
It does not appear that the Watkins decision was cited to or considered by the court when (in 1967) Macris v. Macris (29 A D 2d 528, supra) was sub judice. For, in that case, as has been seen, the court disapproved a similar decretal provision, saying: 1 ‘ Here the important item is for the fixed charges and the maintenance of a family home, owned jointly by the parties and now used exclusively by plaintiff. The extra amount [provided by the appellate modification] above what was ordered at Special Term will enable plaintiff to meet her share of those charges, or at her option to provide other comparable accommodations ”. (P. 529.)
On the other hand, it was said by the Appellate Division in Braun v. Braun (29 A D 2d 929) that “ Although normally it is the preferable practice to make an inclusive award of a specified sum (see Schine v. Schine, 28 A D 2d 976), in this particular case, as a cautionary measure, in view of the plaintiff’s condition and history, the sum awarded her and the children [by the trial court] is to be allocated as follows ’ ’, itemizing separately the amounts for apartment rental, support of the wife, and *136 maintenance for each of the minor children. And in Winkler v. Winkler (25 Misc 2d 938, affd. 13 A D 2d 924, affd. 11 N Y 2d 693) (decided, it is true, prior to the pronouncement of the Schine precept, but also not referred to in that or the later related cases), the trial court mandated separate payments for the wife and the minor children, and the husband was also required (pp. 941-942) “to continue to maintain any and all medical-health insurance which he now carries for the benefit of his wife and children and will pay all medical and dental bills incurred on behalf of his sons. Likewise, in addition to the afore-mentioned $3,400, defendant will pay for the necessary clothing of his older son not to exceed the sum of $350 per year.”
Finally, it has been correctly stated that husband and wife ! ‘ are free to contract and there can be no provision in the decree contrary to the provisions of the separation agreement, for alimony and counsel fees, if suitable support is provided and if the agreement is made fairly and in good faith by both parties, and is lawful in form and apparently valid ” (2 Foster-Freed, Law and the Family — New York [1966 ed.], pp. 79-80, § 22:23). Although there has not been an express integrated agreement between the present parties as to the amount to be awarded the wife, they have, in effect, by their respective submissions, as presented in the proposed and counter-proposed decrees, tacitly agreed in respect of the itemization of the payments to be made and of the allocation for specific purposes insofar as the residence to be provided the wife and the maintenance of the minor son are concerned. I am of the opinion that, as regards the factors involved in such agreement, the Schine lump-sum rule does not apply, and, I think that there is reasonable and logical precedential analogy in support of my view (see Galusha v. Galusha, 116 N. Y. 635; Goldman v. Goldman, 282 N. Y. 296; Schmelzel v. Schmelzel, 287 N. Y. 21; cf. McMains v. McMains, 15 NY 2d 283).
11 Even a superficial inspection of the results of matrimonial lawsuits would suggest that parties disposed to solve the economic consequences of marital failure can reach better resolution for themselves than the court can possibly do for them; and they should be encouraged in this direction where the possibility of agreement exists.” (Shapiro v. Shapiro, 8 A D 2d 341, 342, supra.) Where, as here, the parties (in the light of their preseparation living standards and procedures) may be held to have stipulated as to the allocation of certain items which the husband is willing to pay, and the wife agrees to accept as appropriate —leaving it to the court to resolve those financial issues as to which there is no agreement — it becomes a matter of form *137 rather than one of substance; and, although the Appellate Division has expressed as a general proposition a preference in the usual situation for the provision of lump-sum payments to the wife (as opposed to the enumeration of separate items of support), I am disposed to consider the present a case of the special circumstances adverted to in Schine (supra), and to permit the arrangement to continue.
As a rereading of section 236 of the Domestic Relations Law will make readily obvious, the statute provides not only that payments for real property or for the rental or other carrying charges on premises occupied by the wife, but also that payments for “ personal property and services furnished the wife,” may be required to be made to third persons as well as directly to the wife. That would seem to include medical and related services to the wife and to include the son. In any case, the fact that there is “ express listing of some of the specific things that the payments might cover is an illustration of unnecessary statutory verbiage,” and does not exclude others. (Practice Commentary by David D. Siegel, McKinney’s Cons. Laws of N. Y., Book 14, Domestic Relations Law, § 236, p. 137.)
In the language of Mr. Justice Bergan in another connection, “ It is reasonable to think that a sense of the limitations inherent in judicial directions for support in matrimonial litigation played some part in the development of the rule-of-thumb standards which have been often applied based on ‘ necessity ’ and ‘ the same style and in the same manner ’ of living and, paraphrasing the court’s further remark, I am “of opinion the husband’s voluntary [methods of the] payments for support have here met both the necessity test and the standard of living tests stated in many cases,” and were an effective and permissible guide as to the technical structuring of the judgment in the case at bar. (Shapiro v. Shapiro, 8 A D 2d 341, 342-343, supra.)
(V)
The plaintiff’s motion is denied; and any thought that I, on my own, might have harbored to modify the judgment as to format is abandoned.