FAULK COUNTY MEMORIAL HOSPI-
TAL, Plaintiff and Appellant,

v.

Bernard NEILAN, Defendant
and Respondent,

and

Blanche Neilan, Defendant.

No. 12344.

Supreme Court of South Dakota.

Argued June 5, 1978.

Decided Aug. 17, 1978.

Joseph G. Rimlinger of Pfeiffer & Rimlinger, Aberdeen, for plaintiff and appellant.

Julie T. Lovrien, Aberdeen, for defendant and respondent.

DUNN, Chief Justice.

This case arises from an attempt by the Faulk County Memorial Hospital to collect medical bills accumulated by Blanche Neilan in excess of $3,000 from Blanche and

Bernard Neilan. A default judgment was entered against Blanche by the Circuit Court of the Third Judicial Circuit, sitting without a jury. The court found that Bernard Neilan was not liable for his wife's bills. The hospital appeals that decision. We reverse.

The Neilans were married in 1931. They lived on a farm near Wecota, and ten children were born to this marriage. On or about August 10, 1970, Blanche Neilan left the farm home. No reason was stated specifically as to why she left, but the record suggests that she was suffering from arthritis and other ailments and that the rigors of a farm home without modern conveniences had taken its toll over 39 years. Her husband did not hear from her until a month later when he was served with divorce papers. He answered and counterclaimed for divorce. During the pendency of the divorce action, the lower court entered an order directing Bernard to pay Blanche $100 per month. This order was filed on October 27, 1970, and no further action on the divorce has been taken by either party since that time.

Blanche moved to Faulkton where she rented an apartment, and Bernard remained on the farm near Wecota. He paid her $100 per month, but also ended up paying for rent, groceries and medical insurance in addition to the support payment required by the order. He testified that she was continually requiring groceries and that he could not afford to buy her groceries and eat at a cafe, so they agreed that he could eat his meals with her if he bought the groceries. He also testified that he paid her rent because the veterinarian was her landlord and he felt he had to keep on good terms with the vet. Bernard would also stay and watch television with her after supper, and when it was inconvenient to drive back to the farm, he would stay overnight at Blanche's apartment on a cot. He testified that they had no physical relationship, only an economic one. He also testified that he bought some rugs and furniture for the farmhouse because Blanche had agreed to move back, but she never did return to the farm home. Bernard stated that he still felt bound by the $100 per month order of the court and that he considered the economic assistance he gave Blanche was part of his obligation under that order.

The business manager of the hospital was the only witness other than Bernard Neilan, and he testified that he knew the Neilans were separated, but he also knew that no divorce had ever been granted. Bernard Neilan apparently knew of the hospitalizations of his wife because he complained to the hospital about the treatment Blanche was receiving.

The lower court found that the temporary support order was still in effect and that both parties were bound by it. The court further found that the order only required payment of $100 per month; that it contained no further requirements; and that the payments had been made throughout the years. The lower court concluded that Bernard was not liable for the bills, apparently relying on SDCL 25–7–3 which reads:

"A husband abandoned by his wife is not liable for her support until she offers to return, unless she was justified by his misconduct in abandoning him; nor is he liable for her support when she is living separate from him by agreement, unless such support is stipulated in the agreement."

Other provisions in SDCL 25–7 prescribe further support obligations. SDCL 25–7–1 states that it is a husband's duty to "support himself and his wife out of his property or by his labor." SDCL 25–7–2 allows a third person who provides the wife with "reasonable necessaries" for her support to recover the cost from the husband if he has neglected to "make adequate provision for the support of his wife * * *." SDCL 25–7–4 makes it a felony to "[refuse] or [neglect] to provide such wife with necessary food, clothing, shelter or medical at-

tendance, unless, by her misconduct, he is justified in abandoning her."[1]

The issue of crucial importance is whether the record as a whole supports the conclusion that there was indeed an abandonment under SDCL 25–7–3. In considering this matter, we must give credence to the lower court's findings of fact unless they are clearly erroneous.[2] The findings of fact of the lower court regarding this important issue are lacking and fail to cover the relationship that existed between the parties after the divorce action was started some eight years ago. The record is replete with details explaining this protracted relationship. We would disagree with the conclusion that the facts in the record support an abandonment under SDCL 25–7–3.

The relationship between Blanche and Bernard was of long duration. The couple had raised a family of ten children on the farm near Wecota. In August of 1970, after 39 years of marriage, Blanche left home, and in September of 1970, she served divorce papers and obtained a temporary order for support in the amount of $100 per month. Bernard answered and counterclaimed for divorce. No further action has been taken in these proceedings in the past eight years.

In the meantime, Blanche had taken up residence in Faulkton. For the better part of eight years, Bernard paid the rent and bought the groceries. He also carried a joint medical insurance program and paid the premiums. There is evidence that he paid her property taxes. He ate most of his meals with her and stayed often to watch television with her. When it was inconvenient to return to the farm, he stayed in the apartment with Blanche, although he denied any physical relationship. All of this "support" was in addition to the $100 per month provided for in the temporary order.

While Bernard stated some reasons for paying the rent (he couldn't make the landlord angry because he was also the veterinarian) and for eating with Blanche (he had to buy the groceries anyway), the fact still remains that he has maintained a home for his wife in Faulkton for eight years and has eaten and stayed there at his convenience just as is the custom with many ranchers and farmers in this modern day.

All of the evidence was adduced from Bernard as Blanche did not testify. Thus we have no direct evidence of why she left the farm after nearly 40 years of marriage and started the divorce, or why she did not pursue the divorce and obtain adequate support and a property settlement. The obvious reason seems to be that the parties had reached an amicable arrangement whereby all of Blanche's needs were being taken care of, and Bernard was free to operate his sizeable farm without the disruption of a property settlement.

There is also some testimony from Bernard of his buying furniture and rugs for the farm home so that Blanche would return. The overwhelming evidence seems to be that he acquiesced in this arrangement where she would live in Faulkton and he would eat his meals with her and stay there when convenient. If he had been serious about her returning to the farm home, he had only to stop buying groceries and paying her rent. All of the facts referred to above appear without dispute on the record. We cannot find these facts to be an abandonment as set forth in SDCL 25–7–3. There has been no abandonment within any fair interpretation of the statute.

To constitute abandonment, there must be something more than a mere de-

---

1. Bernard contends that SDCL 25–2–11 defines "necessaries" in a restrictive manner to include only food, clothing, and fuel. In light of the fact that SDCL 25–7–4 is included within the same chapter relied upon by the lower court and includes food, clothing, shelter or medical attendance as "necessary," SDCL 25–2–11 does not modify SDCL 25–7–2 to the extent of rendering Bernard not liable for his wife's hospitalization costs.

2. SDCL 15–6–52(a) provides in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

**124**

parture from the marital abode or mere living apart. Abandonment is defined as the "act of a husband or wife who leaves his or her consort willfully, and with an intention of causing perpetual separation."[3] The actions of Blanche and Bernard over the period of eight years following the initial suit for divorce, including only a couple of months of complete separation belies any intention of perpetual separation.

Nor can Bernard Neilan rely on that portion of SDCL 25–7–3 which states that he is not "liable for [his wife's] support when she is living separate from him by agreement, unless such support is stipulated in the agreement." There was no separation agreement in the present case. If there was any agreement, it was an inferred one to "live together by agreement." The maintaining of two residences is not separation when the husband eats and stays at the wife's residence at his own convenience in addition to providing extensive support for her as evidenced by the record.

Having found that there was no abandonment as contemplated by SDCL 25–7–3, we hold that under SDCL 25–7–1, 25–7–2 and 25–7–4 the general duty of a husband to support his wife is applicable and, therefore, Bernard is responsible for Blanche's hospital bills.

The judgment of the trial court is reversed.

All the Justices concur.

**3.** Henry Campbell Black, Black's Law Dictionary, Revised 4th Ed., 1968, p. 11, citing *People v. Cullen,* 1897, 153 N.Y. 629, 47 N.E. 894, 44 L.R.A. 420. See also, *Polk v. Polk,* 1964, 228 Cal.App.2d 763, 39 Cal.Rptr. 824.